# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT OF KANSAS

2023 APR 28  PM 1: 27

CLERK OF DISTRICT COURT
MCPHERSON COUNTY KANSAS

| | | |
|---|---|---|
| **Forrest L. "Lenny" Geist & Heirs** | § | |
| **Plaintiffs, Pro Se** | § | |
| **v.** | § | |
| **Kansas State University** | § | Civil Action No. _23CV36_ |
| and | § | |
| **Kansas State University Foundation** | § | **Jury Demanded** |
| and | § | |
| **Network Kansas** | § | |
| and | § | |

**Northwest Kansas Economic Innovation Center, Inc.**

and

**Western Kansas Rural Economic Development Alliance**

and

**Lt. Governor David Toland & KDOC Associates, etc.**

**Defendants.**

## PLAINTIFF'S ORIGINAL COMPLAINT

Forrest L. "Lenny" Geist and heirs ("Plaintiffs" or "Lenny" or "Mr. Geist" or "I" or "Me")
brings this suit against Defendants including but not limited to:  Kansas State University
("Defendant" or "K-State" or "KSU"), the Kansas State University Foundation ("Defendant" or
"KSUF" or "Endowment"), Network Kansas ("Defendant" or "Network KS" or "NK"), the
Northwest Kansas Economic Innovation Center, Inc. ("Defendant" or "NWKEIC" or "Innovation
Center"), and the Western Kansas Rural Economic Development Alliance ("Defendant" or
"WKREDA" or "Western KS Alliance"), Kansas Lt. Governor David Toland and Associates
with the KS Dept. of Commerce (KDOC) and affiliated or supporting agencies, et al, and alleges:

## INTRODUCTION

1. This case arises from misappropriation of Intellectual Property (IP), Trade Secrets (TS), and/or Copyrighted Content (CC) created and owned exclusively by Mr. Geist as sole authority for his company, Kansas Freedom Farms, a limited liability company (LLC) {FEIN: 83-2366033} domiciled in the State of Kansas. Mr. Geist demonstrated reasonable measures to protect and maintain his proprietary IP/TS/CC. The Defendants conspired to illegally confiscate Mr. Geist's original authorship, business methods, information, expertise, financial ingenuity, functions, formulas, ideas, patterns, relationships, compilation(s), programs, techniques, and/or processes in order to unlawfully derive independent economic value whether actual or potential.

2. Mr. Geist has never authorized another party, whether a natural person or other entity, to disclose, share, or use his IP/TS/CC and reserves all legal rights thereto uniformly.

3. The Defendants intentionally, knowingly, and willfully, if not maliciously, stole Mr. Geist's IP/TS/CC that is not common knowledge and is not readily ascertainable by lawful means in order to obtain economic value and other benefits from filching the valuable content.

4. On or around February 1, 2017, Mr. Geist began formulating authentic business approaches that creatively blended multiple concepts, technologies, industries, initiatives, and compilations unlike any in use then or since to gain a competitive advantage as well as economic benefits for his private company (LLC). Mr. Geist developed and documented his original authorship, ideas, notions, work, and vision into a confidential, proprietary business plan. Mr. Geist took the extra measure to apply for, document, and receive a trademark from the US Patent & Trademark Office (USPTO) for a symbol, **Technology Enhanced Agriculture (TEA)** that serves as additional evidence for Mr. Geist's efforts to protect his inventive propositions. As such, Mr. Geist authored language in his trademark application submissions that appear on the trademark certificate itself that include words illustrating his novel ideas. This case does not revolve around misuse of the trademark. This case is about related IP/TS/CC thievery. Mr. Geist's applied for a trademark on 10/4/2017. It was published on 4/3/2018 prior to visiting with K-State (**Exhibit A**).

5. Further, Mr. Geist submitted his entire business plan along with his trademark application to <u>demonstrate reasonable efforts to protect</u> its contents and potential applications. Mr. Geist received notice of trademark issuance in 2017. Defendants were aware of Mr. Geist's desire to maintain confidentiality and protections as his business plan, executive summaries, illustrations, and website are embossed with notices of said protections plus legal disclaimers. Defendants illegally absconded with his business plan's content and/or online content from his website (KansasFreedomFarms.com) the <u>Digital Millennium Copyright Act</u> (DMCA) ***protects***.

6. Mr. Geist's first effort to raise (protected) awareness and capital occurred on Sat., July 22, 2017 at The Well coffee shop in McPherson, Kansas by way of an invitation to City of McPherson leaders and supporting representatives for an in-person presentation in the facility's conference room. A Kansas Dept. of Labor official, Susan NeuPoth Cadoret, was present along with McPherson's mayor, Tom Brown, and City Commissioner Mr. Bob Moore, etc. A business plan with IP/TS/CC protection notices and required disclaimers were on handouts' cover pages. No defendants were present. In subsequent days and months, Mayor Brown escorted me to a variety of businesses and professionals in support of my efforts to procure investors. The mayor and the City Commissioners provided me a <u>Letter of Support</u> dated July 17, 2018. (**Exhibit B**) Mr. Geist has worked earnestly for 6 years at significant time and cost. The Defendants are liable to him as courts take a "flexible and imaginative approach" to misappropriating IP/TS to avoid costs as in *GlobeRanger Corp. v. Software AG U.S., Inc.*, (5th Cir. 2016). This might include using plaintiff's development costs as a proxy for what defendant would have possibly incurred.

7. In the interim, Mr. Geist conducted privileged communications and efforts to prospective capital sources hoping to arrange mutually beneficial alliances through investments. One funding alternative is and was the Investment Tax Credit (ITC) for producing any form of renewable energy that's a dollar-for-dollar credit toward any federal tax obligation. The subsidy has extremely intricate and sophisticated regulatory applications and restrictions known by few. Mr. Geist possesses exemplary expertise in this obscure area of the Tax Code while Defendants frequently and openly stated they were unfamiliar with it to include *HOW* it could be optimized. None possessed the creative design ideas or construction ingenuity Mr. Geist possesses that adds economic advantages to proposed real property developments plus business plan deployments. Per *Syntel Sterling Best Shores Mauritius Limited v. TriZetto Group*, 2021 BL 144726 (S.D.N.Y. Apr. 20, 2021), Defendants' benefit is in the form of avoided research and development costs. The damages available under this theory ***"derive from a policy of preventing wrongdoers from keeping ill-gotten gains, and therefore do not require a corresponding loss to the plaintiff."***

8. During Mr. Geist's proprietary efforts to procure investors and other financing, he was fully compliant with US Securities & Exchange laws to include Regulation D and related exemptions such as (but not limited to) 506(c) & (d) categories by filing Form D, which he did. These federal requirements for creators, entrepreneurs, inventors, and other enterprisers require ample disclosures, disclaimers, and transparency to protect consumers. By the same token, the Supreme Court has ruled any/all communications, concepts, content, data, documents, materials, methods, and related matters made public retain all confidentiality and their natural proprietary natures to include any such submissions made public by the Freedom of Information Act (FoIA). Defendants such as K-State and/or KSUF may claim they are state agencies. This means they are bound by recent Supreme Court rulings and existing Federal laws to maintain full confidentiality of any/all communications, conversations, documents, materials, ideas, images, and/or related elements in perpetuity unless otherwise released from such restrictions by the rightful owner(s).

9. During this period, Mr. Geist received a Letter of Support from McPherson's State Representative, Les Mason (R-73), dated August 7, 2018 advocating specifically for his business methods and novel processes to be deployed throughout Kansas. **(Exhibit C)** Mr. Geist also met in person with Kansas Senator Rick Wilborn, (R-35) on a Saturday morning, August 11, 2018 at Neighbor's Café on Main Street in McPherson to closely explore how best to procure capital and integrate Mr. Geist's one-of-a-kind business model in McPherson Cty. and the other 105 Kansas counties to form a network. Mr. Geist believes both credible legislators will testify on his behalf.

10. Mr. Geist's self-imagined and self-developed approaches to disrupt paradigms and enhance economic development across Kansas were unheard of and unparalleled during his expeditionary efforts to advance his initiatives that will undoubtedly benefit many. He met with the K-State College of Agriculture Assoc. Dean, Dr. Ernie Minton, two (2) faculty members, Dr. Candace Shoemaker and Dr. Kimberly Williams, along with KSU Visiting Professor, Fmr. Governor John W. Carlin, and an electrical engineer, David A. Hinson, in the dean's office in Waters Hall on Tuesday, April 24, 2018 at 4:00 pm for a one-hour meeting to discuss a potential public-private partnership that would bring significant benefits to KSU while requiring no IP/TS/CC, assets, ideas, resources, or even bona fide time commitments. Mr. Geist explained how is pioneering business methods and uniquely interwoven applications that include advanced technologies could be configured as a statewide network of 105 "ag-tech campuses" that K-State could share at no cost to the university given Mr. Geist would be the developer and sponsor. Mr. Geist would be enterprise leader for erecting real property assets and endeavors in customized ways only he imagined/illustrated. His proposal suggested possible allegiances with a variety of private, public, and foreign entities that could and would benefit all stakeholders. The Defendants stated Mr. Geist's compilations, concepts, and avant-garde consortiums were ***"too complex, too complicated, and far beyond the ag college's scope and strategic plans."***

11.      At the urging of Fmr. Governor Carlin, who is an advocate for Mr. Geist's company and related enterprises, Mr. Geist met with KSUF leaders on Monday, July 9, 2018 at 1:00 pm for a 90-minute in Manhattan at the KSUF offices followed by a 45-minute talk with the KSUF President, <u>Greg Willems</u>, in the KSUF office's reception area. Mr. Geist didn't provide anyone at the KSUF with a customized presentation slide deck (PPT file) to keep prior to these meetings. Instead, in order to <u>maintain secrecy and proprietary protections</u>, Mr. Geist brought his self-authored slide deck of approximately **157 pages** on a flash drive that he presented on a computer by way of projecting essential content on a viewing screen in a conference room. He took the painstaking and professional initiatives to enhance the KSU/KSUF presentation with university colors, logos, and images he designed and illustrated to show how newly-built assets and cleverly conceived operations could and would substantially enhance the Defendants' best interests for generations to come with no out-of-pocket costs to the university or endowment. Mr. Geist withdrew his flash drive from the computer at the conclusion of the meeting in order to <u>demonstrate and maintain its confidential nature</u> that he stated to the group before presenting.

12.      Six (6) weeks later on 8/23/2018, KSUF Sr. Director of Gift Planning, Mr. Benjamin Johnson, emailed Mr. Geist a formal two-page letter that rebuked his proposal(s) and confirmed a confidentiality accord. In same letter, Mr. Johnson advised Mr. Geist that K-State, KSUF, and College of Ag leaders believed his novel notions and modernistic projects to be far **"too complex"** and <u>likely nothing more than a tax fraud scheme</u>. Johnson's letter demonstrated he and his constituents possessed absolutely no expertise whatsoever or even basic familiarity with Mr. Geist's business plan's content, data, financial foundations, subsidy insights, taxation expertise, etc. Johnson possesses an accounting degree from K-State and a law degree from KU. With such education/credentials, Mr. Johnson admitted Mr. Geist's futuristic and/or professional endeavors were ***far too advanced for K-State & KSUF.*** They had no interest in learning more.

13.      KSUF representative Johnson's letter dated 8/23/2018 **(Exhibit D)** clearly and inarguably validates the Plaintiff's position the Defendants, et al, were not only ***unfamiliar*** with Mr. Geist's intellectual property, trade secrets, and protected content, they unequivocally dismissed all potential to the point of <u>demanding disassociation with *all* of his undertakings</u>.

14.      Mr. Geist moved forward with efforts to connect with investors and other stakeholders to include local, regional &/or various statewide economic dev. agencies including the <u>KS Dept. of Commerce</u> in hopes of acquiring capital, investors, partners, and/or allegiances. Mr. Geist conversed with dignitaries from <u>Network Kansas</u>, the <u>NWKEIC</u>, and the <u>WKREDA</u> following his privileged talks with the K-State College of Ag, the KSU Foundation and others.

15.      Mr. Geist received a <u>Letter of Support</u> from a <u>CloudCorp.</u> Representative on February 28, 2022 indicating this economic development agency's Board reviewed and also advocated for Mr. Geist's company, initiatives and relationships that could boost Cloud County. CloudCorp is a member of the Northwest Kansas Economic Innovation Center, Inc. consortium. The <u>Letter of Support</u> and multiple privileged emails confirm NWKEIC, Inc.'s familiarity with Mr. Geist's confidential, proprietary plans well before the so-called "<u>K-State 105</u>" effort began. **(Exhibit E)** and the discovery process will unveil evidence that fully support Mr. Geist's case.

16.      Mr. Geist received a <u>Letter of Support</u> from Dr. Nathan Eylands, PhD from Cornell University College of Ag & Life Sciences (CALS) to submit with his business plan for a <u>BASE Grant</u> (Building A Strong Economy) application the Kansas Dept. of Commerce rejected. KDOC now appears to embrace Mr. Geist's proprietary content and propositions as it supports the "<u>K-State 105</u>" program gleaned from Mr. Geist's IP/TS/CC and emails. **(Exhibits F-G-I-J)**

## THE PARTIES

1. Mr. Geist resides at and receives all mail at 11334 W. 131st St. in Overland Park, KS 66213.

2. Kansas State University's physical address for the institution's president is:
   Dr. Richard Linton
   Office of the President
   110 Anderson Hall
   919 Mid-Campus Dr. North
   Manhattan, KS 66506-0112
   785-532-6221

3. The Kansas State University Foundation lists its address as:
   Greg Willems, President & CEO
   1800 Kimball Ave. #200
   Manhattan, KS 66502
   833-448-3578

4. Network Kansas lists its street address as:
   Steve Radley, President
   550 North 159th St. E – Unit 208
   Wichita, KS 67230
   877-521-8600

5. The NW Kansas Economic Innovation Center, Inc. (NWKEIC) lists its address as:
   Scott Sproul
   President & CEO
   212 S. Kansas Ave.
   Norton, KS 67654
   785-874-5150

6. Western Kansas Rural Economic Dev. Alliance (WKREDA) lists contact address as:
   Eli Svaty, President
   303 N. Kansas Ave.
   Liberal, KS 67901-3339
   620-604-5136  or
   620-655-2036

7. Grow Hays
   David Clingan, Director of Recruitment & Retention
   219 West 10th Place (inside Brief Space)
   Hays, KS 67601
   785-628-3102

8. Lt. Governor David Toland
   Office of the Governor
   Suite 241S
   300 SW 10th Ave.
   Topeka, KS 66612-1590
   785-296-3232

## JURISDICTION AND VENUE

1. This is a civil action arising primarily under the Uniform Trade Secrets Act (UTSA), Defend Trade Secrets Act (DTSA), Copyright Act, 17 U.S.C § 101, et seq., and multiple tort laws for misappropriation of Intellectual Property (IP), Trade Secrets (TS) and/or Copyrighted Content (CC) infringements involving the Digital Millennium Copyright Act (DMCA) and other laws.

2. This Court has jurisdiction over the subject matter of Plaintiff's claims pursuant to 28 U.S.C. Part IV – Jurisdiction and Venue. This Court has jurisdiction as directed by 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

3. Plaintiff's first proprietary presentation was in McPherson, KS on Saturday, July 22, 2017. Mr. Geist intended then and does now to build HQ for cutting-edge ventures in McPherson.

## THE FACTS

1. Mr. Geist authored and owns valid Intellectual Property (IP), Trade Secrets (TS) and other copyrighted content (CC) via business plans, construction concepts, designs, documents, drawings, expert knowledge, examples, financial models, illustrations, images, maps, and unique methods, processes, and practices that are not easily accessible by any lawful means. A portion of his protected authorship is on KansasFreedomFarms.com. His site displays the legal disclaimer for copyright protection and "All Rights Reserved." Mr. Geist's primary business plan (105-county statewide network of ag tech sites) was written starting in '17 and is **200+ pages** in length while supporting research documents/data may exceed 1,000 pages.

2. Kansas State University College of Ag leaders and KSU Foundation leaders met with Mr. Geist on 4/24/18 and 7/9/18 respectively to discuss potential collaboration or a public-private partnership. KSUF's letter dated 8/23/2018 from Ben Johnson rejected all possibilities, etc.

3. Defendants eventually misappropriated confidential, proprietary business plan(s), documents, emails (privileged communications) and materials bearing IP/TS disclaimers and notices to gain extraordinary economic, financial, social and potentially political advantages, and more. Defendants replicated copyrighted concepts + content from Mr. Geist's website (see below).



4. Defendants announced a "K-State 105" campaign that is an illegal initiative aimed at pirating Plaintiff's IP/TS/CC and falls within the <u>Doctrine of Equivalents</u> legal foundation, etc. Mr. Geist was first made aware of Defendants' illegal activities 1/17/2023. Mr. Geist has a valid US trademark as **Technology Enhanced Agriculture (TEA)** that demonstrates his reasonable effort for secrecy and protection. The US trademark is embossed with language that supports his case. Mr. Geist has disclaimers + SEC-required disclosures on related documents'(below).



## COUNT ONE: VIOLATION of UNIFORM TRADE SECRETS ACT

1. Mr. Geist autonomously authored original, protected business plans, construction methods, diverse methods to gain economic, educational, financial, social, and utility applications, documents, drawings, examples, financial rationales, functionality, hybrid concepts to blend technologies, illustrations, marketing plans, maps, matters related to subsidies, public-private partnership proposals, sales and/or revenue opportunities, technical analysis, and secret methods to deploy customized, multi-faceted property developments that could / would include uncommon, unique, interwoven strategies and tactics unknown by and unavailable to the Defendants through lawful means. This includes but is not limited to the rudimentary concept of creating a statewide network or 105 "ag tech campuses" with at least one (1) in each county plus a research HQ in Kansas. Mr. Geist's business plan depicts and suggests proprietary methods to enhance economic benefits, education, public utilities, many services, sustainability, research, and technology, etc. Mr. Geist's documents and materials illustrate original machinations between idea incubators, innovation, entrepreneurship, and new ways to start and sustain businesses in rural and urban areas. Mr. Geist's self-developed business plan also includes a multitude of other essential elements and platforms the Defendants ultimately deemed lucrative enough to misappropriate. Defendants and associates knowingly, willfully, and maliciously pilfered Mr. Geist's valuable, <u>confidential, proprietary formulas, patterns, compilations, programs, methods, techniques, and/or processes that derive economic value whether actual or potential</u>. Defendants placed a fair market value of at least $3,000,000,000 ($3.0B USD) on Mr. Geist's secrets based on their public press conference on Jan. 17, 2023. **Mr. Geist's expansive due diligence since Feb. 2017** suggests an initial capital injection of $3.0B will lead to an "as complete" fair market value of 10x (+/-) such ($30B) by 2042 or so.

2. From said media release on 1/17/23 from the Capitol Building in Topeka, the Defendants purported to have a project called "<u>K-State 105</u>" that constituted a flimsy renaming and repositioning of Mr. Geist's Intellectual Property (IP), Trade Secrets (TS) and Copyrighted Content (CC) they illegally gleaned from his privileged communications, fully-protected conversations, business plan, exec. summaries, and/or the <u>KansasFreedomFarms.com</u> site. The Defendants' "<u>economic prosperity plan</u>" is a mere rip-off of Mr. Geist's business plan. Defendants attempted to mask replicated compilations, concepts, and protected methods and position their collective misappropriations under the "K-State 105" economic prosperity plan.

## COUNT TWO: VIOLATION of DEFEND TRADE SECRETS ACT

1. Defendants committed federal crimes by pilfering Mr. Geist's business plan's content, related docs' content, emails, and/or copyrighted content (authorship) on his website.

2. <u>The federal gov't defines a trade secret as</u>: ***all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if — (A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.***

3. Mr. Geist took reasonable measures to protect his trade secrets while maintaining required compliance with federal securities laws pertaining to reasonable disclosures/transparency when raising capital for private enterprises (<u>Reg. D</u>). The misappropriated IP/TS/CC have significant independent economic value whether actual or potential. The Defendants

agreed and stated in the aforementioned letter from the KSU on 8/23/2018 they did NOT possess knowledge of or even believe in Mr. Geist's "confidential, proprietary" endeavors to the point of demanding to be disassociated therefrom. Defendants did not have lawful means to access Plaintiff's IP/TS/CC without his authorization or consent, which may have included licensing options or revisiting proposed partnerships. Defendants made no effort to legally acquire Mr. Geist's information. Instead, the Defendants colluded and conspired to greatly enrich themselves at Mr. Geist's expense by breaking federal laws.

## COUNT THREE: VIOLATION of ECONOMIC ESPIONAGE ACT

1. Defendants committed federal crimes by illegally using Mr. Geist's business plan's content, related docs' content, emails, and/or copyrighted content (authorship) on his website for intrastate, interstate, and/or foreign commerce {18 U.S.C. §§1831-1839}.

2. The Economic Espionage Act states:

(a) In General. —Whoever, intending or knowing that the offense will benefit any foreign government, foreign instrumentality, or foreign agent, knowingly — (1) steals, or without authorization appropriates, takes, carries away, or conceals, or by fraud, artifice, or deception obtains a trade secret; (2) without authorization copies, duplicates, sketches, draws, photographs, downloads, uploads, alters, destroys, photocopies, replicates, transmits, delivers, sends, mails, communicates, or conveys a trade secret; (3) receives, buys, or possesses a trade secret, knowing the same to have been stolen or appropriated, obtained, or converted without authorization; (4) attempts to commit any offense described in any of paragraphs (1) through (3); or (5) conspires with one or more other persons to commit any offense described in any of paragraphs (1) through (3), and one or more of such persons do any act to effect the object of the conspiracy, shall, except as provided in subsection (b), be fined not more than $5,000,000 or imprisoned not more than 15 years, or both.

(b) Organizations. —
Any organization that commits any offense described in subsection (a) shall be fined not more than the greater of $10,000,000 or 3 times the value of the stolen trade secret to the organization, including expenses for research and design and other costs of reproducing the trade secret that the organization has thereby avoided.

## COUNT FOUR:  VIOLATION of DIGITAL MILLENNIUM COPYRIGHT ACT (DMCA)

1. Defendants committed federal crimes by illegally copying and using Mr. Geist's business plan's content, related docs' content, emails, and/or copyrighted content (authorship) on his website during covert efforts to forge a duplicate and/or similar undertaking they have now renamed and repositioned as "K-State 105" on the university's domain/URL, etc.  In addition, Defendants are employing Mr. Geist's protected expertise and rare know-how he has fashioned throughout his career and life experiences that were unknown to Defendants prior to Mr. Geist's privileged communications with them during capital raising efforts.

## COUNT FIVE: TORTIOUS INTERFERENCE

1. Defendants committed federal crimes by illegally interfering with Mr. Geist's ability to conduct or continue his affairs by colluding and conspiring to unjustly enrich themselves using Mr. Geist's protected IP/TS/CC and emails by launching a 105-county network that, at its nucleus, is an unlawful equivalent meant to circumvent Mr. Geist's plans for such. The Kansas Tort Claims Act [Kansas Statute 75-6101] prohibits interference with parties' professional dealings that do or *may cause damages* whether financial or otherwise. Mr.

Geist's case is supported by legal precedence including (but not limited to) the <u>Reeves v. Alyeska Pipeline Service Company</u> decision in 1996. The Alaska Supreme Court upheld the Plaintiff's position for protection of his tourism idea the Defendant misappropriated for economic or reputational gains. Plaintiff, Mr. John Reeves, imagined as sole creator a new visitor center at a popular lookout spot by the Trans-Alaska Pipeline (new idea). The Defendants admitted to meeting with Mr. Reeves, stating the opportunity "looked good" to them, and told the Plaintiff they'd need to get back to him since it takes a large corp. a long time to "move" on such a novel idea. Ultimately, Defendants built a new log cabin as a visitor center near the spot Mr. Reeves suggested without Mr. Reeves being included or profiting from his very own idea(s). Mr. Geist's case is far stronger than Mr. Reeves' case since the K-State College of Agriculture, the KSU Foundation, and its leaders stated in writing (8/23/2018 letter) Mr. Geist's ideas and opportunities were wholly *unappealing*. Later, K-State, the Foundation (KSUF), and others chose to steal Mr. Geist's ideas/plans once they filched more of his protected communications, IP, and information in order to better understand the enormity of the lucrative potential his business plan(s) illustrate. This may include collusion with the Kansas Dept. of Commerce and Governor's office. **Exhibit H** includes 3 examples of privileged messages (emails) supporting the Plaintiff. Mr. Geist has many more emails, video conference, and phone records to support his case.

## COUNT SIX: TORTIOUS INTERFERENCE

1. Defendants committed federal crimes by intentionally interfering with Mr. Geist's ability to conduct his endeavors by colluding and conspiring to unlawfully usurp Plaintiff's novel compilations and methods to enrich themselves. The Defendants *used Mr. Geist's contacts, privileged communications, and protected IP, TS, CC, etc.* Economic development agencies, municipalities, county administrators, and local officials are not eligible for sovereign immunity. Plaintiff holds applicable Defendants fully accountable for any/all damages that are not eligible for sovereign immunity. KSUF's 8/23/18 letter directly acknowledges that Mr. Geist's futuristic, original, and visionary inner workings and proposed amalgamations of blended industries and efforts were "complex" and well beyond its agriculture college's and/or endowment's levels of expertise and, without question, fully *unaligned* with their published strategic plans, etc. Named economic agencies and others did not possess the levels of Mr. Geist's expertise and ideation, either. The Kansas Tort Claims Act [Statute 75-6104] prohibits Defendants from interfering with Mr. Geist's enterprises, relationships, and/or fair opportunities to conduct business, advance initiatives, and continue dialogues. Many emails (privileged communications) and other interactions confirm the Defendants' awareness of the proprietary nature of the IP/TS/CC in question and its confidentiality. Municipalities, economic development groups, local elected officials, and entrepreneurial not-for-profit entities, to name a few, are not eligible for sovereign immunity protections. This case mirrors legal precedence favoring Mr. Geist. In <u>San Jose Construction (SJC) v. S.B.C.C.</u> (d/b/a South Bay Construction Company), a CA court ruled for the Plaintiff when a competitor circumvented the Plaintiff's professional relationships in order to gain economic advantages and/or financially. Laws state, "*The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another which fall outside the boundaries of fair competition.*" (Settimo Associates v. Environ Systems, Inc. (1993) 14 Cal.App.4th 842, 845 [ 17 Cal.Rptr.2d 757].)" Defendants knowingly usurped Mr. Geist's professional relationships and/or undermined efforts between Mr. Geist and his potential investors, partners, and/or any beneficiaries. This includes bond issuers, et al. Damages don't have to be actual. Liability for damages includes *potential monetary gains*. The Plaintiff holds all Defendants accountable for wrongfully taken IP/TS/CC/emails, etc.

## COUNT SEVEN:  VIOLATING FEDERAL SECURITIES LAWS

1. Defendants committed federal crimes by illegally raising capital for the "K-State 105" campaign and/or related "economic development plans" that are misappropriated from Mr. Geist's enterprises and unique, proprietary prof. dealings.  Mr. Geist complied with Securities & Exchange Commission (SEC) laws via Form D registration. The Defendants are raising capital for an <u>illegal equivalent</u> of Mr. Geist's plans without SEC registration. Furthermore, Mr. Geist complied with SEC laws to safeguard investors and the public. His legal obligation to disclose essential information and/or pertinent information does not constitute authority for others to abuse, misuse, or misappropriate any content, data, ideas, financial expertise or forecasts, or any material whatsoever for any purpose. The Supreme Court ruled recently that even public disclosures brought by <u>Freedom of Information Act</u> (FOIA) requests remain fully confidential, proprietary and protected regardless of reason for disclosure to a gov't and/or public agency and must be treated as such in perpetuity unless the legal holder allows legal release.  This is found in the <u>Food Marketing Institute v. Argus Media Leader</u> decided on 6/24/2019.  In this case, Defendants violated Plaintiff's protection afforded him from required content disclosures. Said crimes were not limited to Mr. Geist's disclosures to the SEC and posted on the <u>SEC registration site</u>. Defendants are prohibited from using any/all parts of Mr. Geist's IP/TS/CC/emails after being exposed to it for the purpose of raising resources that may <u>qualify as investments</u> &/or contributions.

## COUNT EIGHT:  VIOLATING COMPUTER FRAUD & ABUSE ACT

1. Defendants committed federal crimes by violating the <u>Computer Fraud & Abuse Act</u> (CFAA), which is codified at Title 18, United States Code, Section 30.  The Defendants used computers and/or electronic devices that fall under this legal definition to illegally advance criminal, nefarious activities in order to enrich themselves at Mr. Geist's expense.

## COUNT NINE:  COMMITTING CYBER CRIMES (KS 22-2619)

1. Defendants committed cybercrimes in violation of <u>Kansas Statute 22-2619</u> involving any or all "crimes committed with an electronic device" to Mr. Geist's significant detriment.

## COUNT TEN:  CRIMINAL CONSPIRACTY

1. Defendants committed criminal conspiracy defined as: ***"Conspiracy is an agreement between two or more people to commit an illegal act, along with an intent to achieve the agreement's goal."*** The Defendants conspired to work together to Mr. Geist's detriment. The discovery process will undoubtedly uncover a very substantial amount of physical evidence from both personal and professional devices, documents, and communications including but not limited to emails, text messages, and phone logs supporting Mr. Geist. According to multiple legal institutes, when an IP right is violated by the willful use of someone else's trademark, trade secrets or copyrighted work (usually in the course of a business), without the proper authorization or licensing to do so, it is a ***criminal wrong***. <u>Mens rea</u> (criminal intent) is clearly in place. However, prosecution does not have to willful knowledge of the crime. Per <u>Cornell Legal Institute</u>: a defendant need not know that his/her conduct is illegal to be guilty of a <u>crime</u>.  Defendants must merely be aware their actions ***could*** be unlawful and able to make rational decisions to act on them or not.

## ATTORNEY'S FEES

1. Pursuant to <u>17 U.S.C. § 505, 17 U.S.C. § 1203</u>, Mr. Geist *is entitled to recover his attorneys' fees, court costs, lost wages, and case-related expenses as part of this civil remedy.*

## JURY DEMAND

1. Plaintiff demands a trial by jury.

## PRAYER

1. Plaintiff prays for the following relief:

A. <u>Actual damages</u> based on misappropriation of Intellectual Property (IP), Trade Secrets (TS), copyrighted content (CC), and tortious interference for an amount of no less than three billion dollars {$3.0B} given ***Defendants determined this as fair value of a 105-site network of new developments at a public press conference on 1/17/23 held in the State Capitol Building***. Recent <u>awards</u> involving misappropriations of TS, IP, CC, and privileged communications (emails) exceeded <u>$2.0 Billion</u> (*Appian Corp. v Pegasystems, Inc.*) for lesser market values.

B. Related thereto, The Third Circuit upheld an award of unjust enrichment damages. *PPG Indus. v. Jiangsu Tie Mao Glass Co.*, 2022 U.S. App. LEXIS 24411 (3d Cir. Aug. 30, 2022). The court awarded the plaintiff the additional costs the defendant would have incurred to develop the misappropriated technology without the benefit of the trade secrets and related.

C. <u>Punitive damages</u> in the amount the Court deems fair and reasonable for this matter.

D. Damages for <u>Emotional Distress</u> in the amount the Court deems fair and reasonable.

E. An injunction from the Defendants continuing to advance the "K-State 105" campaign until this civil action as well as potential criminal prosecutions have been fully completed.

F. An injunction requiring Defendants to place ALL capital, donations, gifts, or items of any monetary value already procured or received in the future related to the "K-State 105" effort, whether directly or indirectly, into an escrow account of the Court's choosing to secure such assets under the Court's jurisdiction and supervision so said assets may be appropriated to Parties accordingly upon full resolution of this matter. Mr. Geist suggests any suitable financial institution in McPherson County or Sedgwick County yet leaves this to the Court. Mr. Geist requests a detailed spreadsheet with up-to-date contributions of all types to include contact information for all contributors as well as sources for contributions whether already completed or planned. This spreadsheet should be prepared to withstand close IRS scrutiny.

Respectfully submitted,

Mr. Forrest L. "Lenny" Geist & Heirs, pro se

Date: April 28, 2023

Forrest L. Geist, CEO – Developer – Sponsor
Kansas Freedom Farms, LLC
11334 W 131st St.
Overland Park, KS 66213
C: (623) 687-4163
E: KansasFreedomFarms@gmail.com
<u>KansasFreedomFarms.com</u>

Witnessed by
Cindy Peter
Clerk of Court

# EXHIBIT A

# United States of America

## United States Patent and Trademark Office

## Technology Enhanced Agriculture (TEA)

**Reg. No. 5,614,678**

**Registered Nov. 27, 2018**

**Int. Cl.: 35**

**Service Mark**

**Principal Register**

Forrest L. Geist (UNITED STATES INDIVIDUAL), AKA Mr.
9452 W 193rd Terrace
Bucyrus, KANSAS 66013

CLASS 35: Association services promoting the education, interests, and best practices for hydroponic growing of produce, improving renewable energy sources for indoor agriculture, soil and water conservation, solar greenhouse designs, integrating local data collection, namely, analytics to improve hydroponic produce production and efficiencies, marketing of hydroponic produce to wholesalers, retailers and end consumers, opening international sales and distribution channels of said produce, and advancing Technology to Agriculture Professionals and Stakeholders; Association services, namely, promoting diversity in the restaurant and hotel industries on behalf of employees, vendors, management, and owners; Association services, namely, promoting greater minority inclusion in the sports industry; Association services, namely, promoting societal, ecological and economic benefits from appropriate uses of indoor farming, Association services, namely, promoting the interests of professionals in technology and agriculture; Association services, namely, promoting the public interest and awareness in cancer research and education; Association services, namely, promoting public awareness of technology that improves Agriculture; Advertising and promotional services; Business management of homeowners associations for others; Business management of the nonprofit corporations and trade associations of others; Business records management services relating to business entity formation and associated state reporting requirements; Homeowner association services, namely, promoting the interests of homeowners in a specific community and marketing the community nationwide to prospective new residents and property owners; Labor unions; Political action committee services, namely, promoting the interests of professionals in Technology and Agriculture in the field of politics; Promoting public awareness of the need for Technology to Improve Agriculture; Promoting the goods and services of others by providing an interactive website where users can increase the current value of an online discount being offered by purchasing the goods and services associated with that discount in the form of an online coupon, voucher or gift card; Promoting the interests of Agriculture professionals by means of Technology; Providing a pricing program in the field of property and casualty insurance through which members of designated associations, organizations, and groups may be offered or granted downward adjustments in the premiums for such insurance; Trade association services, namely, promoting the interests of professionals in Technology and Agriculture worldwide

FIRST USE 10-1-2017; IN COMMERCE 10-1-2017

THE MARK CONSISTS OF STANDARD CHARACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT STYLE, SIZE OR COLOR

No claim is made to the exclusive right to use the following apart from the mark as shown: "TECHNOLOGY ENHANCED AGRICULTURE"

Director of the United States
Patent and Trademark Office

# EXHIBIT B

**City of McPherson**
400 E. Kansas Ave.
P.O. Box 1008
McPherson, KS  67460



City Administrator 620-• 245-2535
City Attorney • 245-2535
Public Works Director • 245-2545
Fire Chief • 245-2505
City Inspector • 245-2547
Chief of Police • 245-1200
Sanitarian • 245-2548
Public Lands & Facilities • 245-2535
Cemetery Sexton • 245-2568
Tele Fax • 245-2549

July 17, 2018

Amy Hackler, Senior Regional General Manager, Generation
Zack Olson, PE Next Generation Agriculture
Kim Lovan, Co-Founder Next Generation Agriculture

On behalf of the City of McPherson, Kansas, we are pleased to support Kansas Freedom Farms and Lenny Geist in the efforts to bring vertical farming to Kansas. The McPherson BPU provides low electrical rates to industry and residential customers. We have used Black and Veatch services for professional resources. We have worked with David J. Koehler, PE who recently retired. We will work with Rich Jacober, Vice President & Project Director Power Delivery, Energy Division.

Recently, we have been using Black and Veatch resources to perfect water rights for wells and land we purchased south of McPherson. Currently, we have a very good water supply. The purchase of wells in the deep part of the Equus Beds Aquifer will enhance our future with a very adequate supply of water.

McPherson is home to several advanced manufacturing facilities as a result of highly competitive utility rates, excellent workforce with high productivity, schools and community amenities and activities. Our low unemployment rate continues to be below the State rate.

McPherson exhibits collaboration and cooperation to build relationships to enhance community and develop enterprise opportunities. Lenny Geist and Freedom Farms has made presentations to the community at large and to the City Commission.

Respectfully,

*Thomas A. Brown*
Thomas A. Brown

*Robert D. Moore*
Robert D. Moore

*Larry E. Wiens*
Larry E. Wiens

| Mayor | Commissioner of Public Facilities | Commissioner of Streets & Utilities |
|---|---|---|
| *Thomas A. Brown* | *Robert D. Moore* | *Larry E. Wiens* |

# EXHIBIT C

STATE OF KANSAS
HOUSE OF REPRESENTATIVES

STATE CAPITOL
300 S. W. TENTH AVENUE
TOPEKA  KS 66612
(785) 296-7640,



LES MASON
73RD DISTRICT

DISTRICT OFFICE
108 ARCADIAN CT
McPHERSON  KS 67460

August 7, 2018


Lenny Geist
CEO - Manager
Kansas Freedom Farms, LLC & NFP
18260 Canterbury Drive
Stilwell, KS 66085


Dear Lenny:

Thank you for the latest update on your proposed McPherson project. I wanted to write a short note expressing support for it. As Chairman of House Commerce, Labor and Economic Development, I know that it's important for projects, such as these, to improve the economic vitality and prosperity of rural communities.

I, also, think it's obvious that the McPherson community has a long and storied history of economic development, and a great track record of public and private interests coming together to foster the growth. As you know, our community, state, and local industries have worked harmoniously, for decades, to improve the quality of life of our citizens.

In conclusion, I do support the proposed project, and hope that you will contact me with updates and any request for assistance.


Yours truly,

Les Mason

Les Mason

# EXHIBIT D

**KANSAS STATE UNIVERSITY**
## FOUNDATION

1800 Kimball Avenue, Suite 200 | Manhattan, Kansas 66502
785.532.6311 | 785.532.7305 fax
www.found.ksu.edu

8/23/2018

Lenny Geist
Kansas Freedom Farms

**Dear Lenny:**

Thank you for taking the time to meet with myself and some of our Leadership Team at the KSU Foundation. We appreciated your sincere interest in partnering with K-State and learning about the unique concept you have devised to generate infrastructure support and potential revenue streams through private eco farms under the Kansas Freedom Farms brand.

Please accept these observations and recommendations as guidance for what you are pursuing. First, a partnership of this nature would be completely dependent on the University's priorities and timelines with respect to new facilities or modernization of existing facilities. Meeting with them about their facilities priorities would be a first step. Second, the University would have to access the financial feasibility and risk of the scheme which is quite complex - any potential direct financial benefit to K-State relies completely on the discretionary decisions of a substantial number of individuals to achieve the tax credit infrastructure support and the viability of a niche market food production enterprise to generate potential revenue streams would need due diligence. Finally, the University's risk assessment of a partnership's impact on reputation and brand will need considerable legal, financial and statutory compliance review.

To be completely direct and transparent, our professional advice and counsel to the University from a fundraising perspective would be as follows:

Unfortunately, this is not a project we would be prepared to endorse and able to commit to at this time for a number of reasons.

- The impact and dollar amounts referred to in terms of a total project are rather ambitious without proof this works on a smaller scale;
- The time and resources it would take to promote such a project detracts from our core mission of raising direct philanthropic support for Kansas State University;
  The complexity of this tax credit scheme and overall transaction is not one we would be able to easily describe too, or encourage alumni and donors to participate in;
- The lack of a Private Letter Ruling from the IRS, specific to this scheme presents far too much risk to our reputation as a Foundation if participant's "tax credit contributions" are not ultimately accepted by the IRS. Opinions from tax attorneys or accountants confirming the scheme's analysis would not, alone, be adequate proof of viability.
- And the complexity of how the private/public relationship would work with the multiple LLCs and bank trust accounts in conjunction with our own accounting, compliance, and audit responsibilities.

# EXHIBIT D – Page 2



**KANSAS STATE UNIVERSITY FOUNDATION**

*BOLDLY ADVANCING K-STATE FAMILY*

We assume and trust that the slide deck you shared with us was developed as a "private and confidential" presentation exclusively for our conversation. If that is not the case, we respectfully request that you completely refrain from using any and all references, in any promotional and informative materials you may have developed or shared with others, to Kansas State University, the KSU Foundation, the College of Agriculture, any employee of K-State or the KSU Foundation, and most importantly any of the University's alumni or donors who have not directly agreed to be so represented. It would be inappropriate to use the pictures, names and likenesses of any individuals or entities in your materials and presentations, and must be demanded that Kansas State University not be implicitly associated with this project going forward in any manner.

Again, we appreciate you bringing this opportunity to us, and wish you success in the future.

Best Regards,

Benjamin A. Johnson
Senior Director of Gift Planning
Kansas State University Foundation

# EXHIBIT E



**Board of Directors**

Terry Koch
President

Lucas Chavey
Vice President

Marsha Wentz
Secretary

Brian Kenning
Treasurer

Beth Blackwell

Quentin Breese

Dana Brewer

Gary Caspers

Jim Coash

Phil Gilliland

Chuck Lambertz

Kurt Kocher

Toby Nosker

Tim Parker

Mark Paul

Jesse Pounds

Ben Retter

Richard Schultz

Phil Sudduth

Loren Swenson

Casey Richard


**Staff**

Nicole Reed
Administrative Assistant

February 28, 2022

Lenny Geist
CEO-Manager
Kansas Freedom Farms, LLC & NFP
18260 Canterbury Drive
Stilwell, KS  66085

Dear Lenny:

I am Nicole Reed, Administrative Assistant for CloudCorp, Cloud County Economic Development in Concordia,KS.  Thank you for notifying CloudCorp with your latest information regarding your proposed McPherson project.  I notified the Board of Directors for CloudCorp about your project.  Our Board supports the agricultural economy and agriculture business development.  CloudCorp does support the proposed project.  Please continue to contact CloudCorp with details moving forward.

Sincerely,

*Nicole Reed*

Nicole Reed

606 Washington Street, Suite B    Concordia, Kansas 66901-2827    kim.reynolds@cloudcorp.net
Voice (785) 243-2010        Fax (785) 243-2014      Mobile (785) 614-0003

# EXHIBIT F

Mr. Jonathan Clayton
Director of Economic Recovery
Kansas Department of Commerce
1000 SW Jackson St., Suite 100
Topeka, KS 66612                                                        February 9, 2022
Jonathan.Clayton@ks.gov

Re: Letter of Introduction and Support for CEA (Controlled Environment Agriculture) in Rural Kansas

Dear Mr. Clayton:

I am a doctoral researcher in the Cornell CALS CEA program studying Plant Sciences with emphasis on growing diverse crop species indoors. I work directly with the renowned department chair, Dr. Neil Mattson.

I have significant experience in the private sector as the operations manager from 2014-2019 at Ozark All Seasons in Winslow, Arkansas (pop. 398) that grows and sells hydroponic produce to local customers as well as produce buyers for major grocers. Additionally, I've worked at Cashman Nursery as a landscape foreman and have intimate familiarity with how CEA horticulture production benefits this nationwide industry, too.

I have friends, former students, and associates who work for Bright Farms, Gotham Greens, Little Leaf in Devens, MA (pop. 1,969), and Lef Farms in Louden, NH (pop. 5,600). The latter has one acre under glass and harvests over 3,000 lbs. of produce *a day* totaling about 1.1 million per year while employing 12 people. This WMUR-TV VIDEO from 2017 shows Lef Farms does this volume *without* stacking troughs [vertical growing].

Wholly-natural, nutrient-dense greens bring premium prices that enable local restaurants, grocery stores, school districts, health food shops, and culinary artists to offer healthy, tasty foods to rural communities. There are abundant offtake candidates for all-natural CEA horticulture. Direct sales to local residents at lofty retail prices are common while additional produce is frequently sold in mass volumes to brand name retail chains like Albertsons, Aldi, Kroger, Giant Eagle, Safeway, Sprouts, Target, Vons, Wal-Mart, Whole Foods, etc.

CEA groups like AeroFarms, Bowery Farming, Plenty and others focus their expansion on the coasts and South from what I've observed. I see notable potential in penetrating and serving consumer segments in the Midwest. Given our Bread Basket is agriculture heavy, there are many ancillary offtake clients for diverse crops such as those for fodder for livestock and poultry feeds. Landscape nurseries, floral retailers, pharma, pet foods, and plant-based meats comprise five (5) sizable revenue sectors CEA farms can supply steadily. Furthermore, land acquisition requires less capital in the Midwest in comparison to coastal and urban regions and comes with a centrally-located network of distribution routes to all areas of the country.

You are likely aware CEA is eco-friendly, conserves valuable water, and offers biodiversity to growers. There may be opportunities to collaborate on research to explore growing popular plant species in CEA facilities such as coffee beans, cocoa beans, perennials, etc. I welcome the chance to work together.

Sincerely,

*Nate Eylands*

Nathan "Nate" Eylands, BS, MS, PhD Candidate
Cornell College of Agriculture & Life Sciences (CALS)
134A Plant Science Bldg.
Ithaca NY 14853
Cell: (406) 579-0553

# EXHIBIT G

Cornell**CALS**     College of Agriculture
and Life Sciences



Mr. Lenny Geist
CEO & Manager
Kansas Freedom Farms, LLC
11334 W. 131st St.
Overland Park, KS 66213                                          October 11, 2019

Re: Letter of Interest in Collaboration

Dear Mr. Geist:

We are writing to express interest in working with you and your constituents to advance research and
studies related to agriculture technology, controlled environment agriculture, and renewable energy.
The AI components and robotic integration you propose are compelling as are your marketing ideas.

We and other Lab Team members with the CEA program are eager to help you establish a new
hydroponic growing environment that uses clean energy near the Cornell University campus. It is our
understanding you and your associates are seeking to improve methods in agriculture production that
include growing traditional produce items as well as exploring how to grow other plants that have little
or zero known research findings in accordance to plant life and development indoors. We discern you
have preliminary interest in learning how CEA can be leveraged to improve outputs for plant life such
as barley sprouts and wheatgrass for livestock fodder, hops for cereal malt beverages, arabica coffee,
tobacco, vanilla orchids, cocoa beans, artemisia annua, fenugreek, floral and potentially other species.

We and other dedicated and inquisitive counterparts would like to know more about the facility you
prefer to establish nearby and how we may be able to assist you with staff, expertise, and relationships.

We comprehend your efforts may offer benefits to public and private sectors locally and globally. It is
our sentiment there are clear advantages to sharing information, efforts, and resources to benefit our
organizations and those who are associated with them as well as the general public's well-being. The
Tompkins County public transportation system serves Cornell University, the City of Ithaca, and the
neighboring communities effectively. Should you choose a site within a few miles of the CU campus,
TCAT will be able to transport staff and stakeholders. Cornell University is home to almost 25,000
students and a sizable staff. CU may be able to provide direct offtake of whatever is grown in your
facility as CU has a working dairy farm and creamery, hospitality school (restaurants/cafeterias), and
assorted amenities that host students, faculty and staff who consume copious food amounts each day.

We invite additional discussions to advance your initiatives and encourage your questions.

Sincerely,

Dr. Thomas Silva, PhD             Nate Eylands, MS Hort.          Brandt Geist
Senior Lecturer – Plant Biology   Doctoral Candidate             CEA Lab Team
Cornell CALS                      Cornell CALS                   Cornell CALS
257 Plant Science Bldg.           134A Plant Science Bldg.       134A Plant Science Bldg.
Ithaca NY 14853                   Ithaca, NY 14853               Ithaca, NY 14853

Diversity and inclusion are a part of Cornell University's heritage. We are a recognized employer and educator valuing AA/EEO, Protected Veterans and Individuals with Disabilities.

# EXHIBIT H



Questions

**David Clingan**

Hey Lenny

I have talked with a few leaders in Hays and Ellis County and wanted to direct some questions they have asked. So if you could answer these so I can get back to them I would appreciate it

Q1) You shared a lot of information and photos of other companies success. What background does your company have in the vertical farm industry? If the financial program you have described worked there would be a high risk of who would come in and build the vision. What past examples can I share with them?

Q2) I know I asked this question during our zoom call but with all the potential why has no one already jumped on this program? This creates more questions than answers even as I reach out to other economic developers

Q3) If the programs worked like I was told your company has no financial risk. The not-for-profits bring in the money as bonds which hopefully our local banks would be part of. Than in this case your company uses the money given to use to build the business. They realize the potential economic and educational surge it could provide but would like to see your business plans for this model. Do you have one you can share?

Q4) You sent an email earlier about other "Clean Programs" possible. Has your company succeeded in the past on any of these other programs? Please direct me to some of these examples

Thank you sir

**David Clingan**
*Director of Recruitment and Retainment*
Grow Hays, Inc. | Brief Space
215 West 10th  Hays, KS 67601
D: 785 628 3102 | M: 785 259 6115
David@GrowHays.com
www.GrowHays.com



Referral from Randy Snider with USDA in Iola, KS and Fmr. Governor John W. Carlin

**Lenny Geist**

Good morning  Secretary Toland

Congratulations on your confirmation as Secretary of Commerce for the Sunflower State! I believe you will be wonderfully successful in this role and I am more than willing to help you become just that. As fellow Jayhawks I believe there is much we can do to serve our state and help it prosper

Speaking of which  both Randy Snider and John Carlin suggested I get in touch with you post confirmation to share with you a vision to bring significant prosperity to Kansas through job creation  rural restoration  the integration of more and better technology in the agriculture and wireless communications industries  and support of Veterans causes along with feeding the hungry. Both Randy, and John are intimately familiar with my business plan  feasibility study, and innovative concepts that will significantly improve agriculture production and economic outputs

Firstly, I would like to send you a few abbreviated materials and a video link to chat vertical farming is  how a data center works  and this practical approach to using renewable energy  to power 5G Network  build-out efforts in rural areas to help our farmers become more profitable and our rural towns and businesses more competitive. Is this email address conducive to links and attachments?

Secondly, I'd like to visit with you in person in either Topeka or Iola at your convenience. Once you've reviewed the business plan summary and viewed the short documentaries (about 4-5 minutes each for three videos) I'm sure you'll better understand and be intrigued by how these forthcoming enterprises can make tremendous impact on job creation and rural development. As such  I will look forward to meeting with you in person whenever and wherever you prefer to fit in the blanks of any  answer questions  and lay out my forecast for how to bring Kansas agriculture and rural restoration proactively forward into 21st century technologies and productivity

I encourage you to review what the Investment Tax Credit (ITC) for renewable energy is in the meantime. This dollar-for-dollar tax credit against personal income  corporate income  trust income  estate taxes  owed  and/or capital gains is unlimited and can be a tremendous resource  Federal subsidy  we can leverage and optimize here in Kansas to improve our economy

Once again  congratulations on your new role. You've earned it and will do quite well  Let's get together asap and see how I and my  constituents can help you develop commerce in KS

My  warm regards

Lenny Geist
CEO - Manager
Kansas Freedom Farms  LLC & NFP
11334 W  131st St
Overland Park  KS 66213
Cell  (623) 657-4163
Linked In

---



**David Toland [KDC]**  <David Toland@ks.gov>                                    May 3 2019  4:39 PM

to Becky

Mr Geist  thanks so much for reaching out  Anyone recommended by both Governor Carlin and Randy Snider—and who's a Jayhawk to boot—is good in my book!

This is the best email for sending the links and attachments you referenced  And I've copied Becky Sabel to find us time to meet  Looking forward to it! David

Sent from my iPhone

On May 2  2019  at 9:48 AM  Lenny Geist <kansasfreedomfarms@gmail.com> wrote:

> EXTERNAL: This email originated from outside of the organization  Do not click any links or open any attachments unless you trust the sender and know the content is safe

...

**Lenny Geist**  <kansasfreedomfarms@gmail.com>                                    May 3 2019  5:32 PM

to David, Becky

Hello, Secretary Toland

I hope your week went well and your Friday evening is poised to provide a great weekend for you as well

# EXHIBIT I

Department of Commerce

1000 SW Jackson St Ste 100

Topeka, Kansas 66612



David C. Toland, Secretary

Phone (785) 296-3481

Fax (785) 296-5055

KansasCommerce.gov

Laura Kelly, Governor

April 11, 2022

Kansas Freedom Farms, LLC
ATTN: Forrest L "Lenny" Geist

Dear Forrest L. "Lenny"

Thank you very much for your submission for grant funding through the SPARK Building a Stronger Economy (BASE) grant program. Throughout this process, it has become evident that there is a strong need to continue to support infrastructure development to address economic development opportunities across the state.

More than 440 applications were received for the BASE program totaling $1.8 billion in requests. With over $1.8 billion in requested funds and only $100 million in available funding, the level of funding could not match the enormous request of funds received for this program. Therefore, we are not able to fund every grant request received.

All applications were reviewed and scored based on the information that was submitted. Unfortunately, your application was not selected in this round of grant awards. **Therefore, Kansas Freedom Farms, LLC has not been approved to receive a BASE grant at this time.**

We will keep your application on file, and should additional funds be made available through the BASE grant program, your application will be reviewed for additional consideration.

We wish your organization much success as you continue to navigate these unprecedented times. Should you have any questions, please email them to CommerceSPARK@ks.gov.

Thank you,

Jonathan Clayton
Director of Economic Recovery
Kansas Department of Commerce

# EXHIBIT J



Department of Commerce
1000 SW Jackson St Ste 100
Topeka, Kansas 66612

Kansas
Department of Commerce

Phone: (785) 296-3481
Fax: (785) 296-5055
KansasCommerce.gov

David C. Toland, Secretary

Laura Kelly, Governor

April 26, 2023

Forrest L. "Lenny" Geist
Kansas Freedom Farms, LLC

Dear Forrest L. "Lenny":

Thank you very much for your submission for grant funding through the SPARK Building a Stronger Economy (BASE) grant program. Throughout this process, it has become evident that there is a strong need to continue to support infrastructure development to address economic development opportunities across the state.

More than 500 applications were received for the BASE program totaling over $2 billion in requests. With over $2 billion in requested funds and only $50 million in available funding, the level of funding could not match the enormous request of funds received for this program. Therefore, we are not able to fund every grant request received.

All applications were reviewed and scored based on the information that was submitted. Unfortunately, your application was not selected in this round of grant awards. **Therefore, Kansas Freedom Farms, LLC has not been approved to receive a BASE grant at this time.**

We will keep your application on file, and should additional funds be made available through the BASE grant program, your application will be reviewed for additional consideration.

We wish your organization much success as you continue to navigate these unprecedented times. Should you have any questions, please email them to CommerceSPARK@ks.gov.

Thank you,

Jonathan Clayton
Director of Economic Recovery
Kansas Department of Commerce