**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **FORREST L. "LENNY" GEIST & HEIRS,** Plaintiff, | ) | |
| v. | ) | Case No. 6:23-cv-01129-JWB-KGG |
| **KANSAS STATE UNIVERSITY, et al.,** Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF THE STATE DEFENDANTS' MOTION TO DISMISS**

Defendants Lt. Governor David Toland, in his official capacities as Lieutenant Governor of the State of Kansas and Secretary of the Kansas Department of Commerce,[1] and Kansas State University ("K-State") (collectively, the "State Defendants"), offer the following Opening Brief in support of their Motion to Dismiss.[2]

---

[1] In the caption of his Original Complaint, Mr. Geist also lists "KDOC Associates" as a party. No such entity exists, and the only employee of the Kansas Department of Commerce upon which Mr. Geist attempted to effectuate service (albeit, ineffectively and improperly) is Lt. Governor Toland. *See* Doc. 4-1, at p. 35. Further, page 5 of the Original Complaint makes clear that Mr. Geist is suing only Lt. Governor Toland in his official capacity. In any event, even if Mr. Geist had properly named and served other employees of the Department of Commerce, all the dismissal arguments in this Motion would apply equally to them.

[2] Lt. Governor Toland filed a motion to dismiss in state court, prior to this case being removed. *See* Doc. 20. That motion primarily raised arguments specific to the case having been filed in state court that are now moot. And, in any event, it is unclear whether such a motion remains live after removal. It is Lt. Governor Toland's intent that the present Motion to Dismiss supersede the motion he filed in state court. And, to the extent necessary, he respectfully moves this Court for leave to substitute the present motion for the state court motion.

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..... ii

SPECIFIC RELIEF SOUGHT ..... 1

NATURE OF THE MATTER BEFORE THE COURT ..... 1

STATEMENT OF FACTS ..... 2

ARGUMENTS AND AUTHORITIES ..... 5

I. STANDARD OF REVIEW ..... 5

II. THE STATE DEFENDANTS HAVE TRADITIONAL SOVEREIGN IMMUNITY FROM ALL OF MR. GEIST'S FEDERAL CLAIMS ..... 6

III. MR. GEIST'S STATE LAW CLAIMS ARE BARRED BY KTCA IMMUNITY ..... 11

IV. MR. GEIST FAILS TO STATE VIABLE CLAIMS ..... 12

CONCLUSION ..... 13

CERTIFICATE OF SERVICE ..... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alden v. Maine*,
527 U.S. 706 (1999) ... 6, 7

*Allen v. Cooper*,
140 S. Ct. 994 (2020) ... 10

*Barnett v. Pikes Peak Cmty. Coll. Police Dep't*,
2015 WL 4245822 (D. Colo. 2015) ... 9

*Barrow v. Kansas State Univ.*,
2022 WL 2072693 (D. Kan. 2022) ... 6, 7, 8

*Billings v. Wichita State Univ.*,
557 F. Supp. 1348 (D. Kan. 1983) ... 8

*Bluport Co., LLC v. United States*,
533 F.3d 1374 (5th Cir. 2008) ... 10

*Brantley v. Richards*,
2020 WL 2306634 (D. Kan. 2020) ... 5

*City of Albuquerque v. U.S. Dep't of Interior*,
379 F.3d 901 (10th Cir. 2004) ... 5

*College Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*,
527 U.S. 666 (1999) ... 9, 10

*Connelly v. State Highway Patrol*,
26 P.3d 1246 (Kan. 2001) ... 8

*Ex Parte Young*,
209 U.S. 123 (1908) ... 7, 9

*Flagg v. Kan. Dep't of Children and Family Servs.*,
2022 WL 1421541 (D. Kan. 2022) ... 6

*Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank.*,
527 U.S. 627 (1999) ... 9

*Frank v. Kansas Dep't of Agric.*,
2019 WL 2393008 (D. Kan. 2019) ... 5

*Hall v. Okla. Dep't of Rehab. Servs.*,
2018 WL 991543 (W.D. Okla. 2018) .... 8

*Hendrickson v. AFSCME Council 18*,
992 F.3d 950 (10th Cir. 2021) .... 9

*Jones v. Core Civic Corp.*,
2018 WL 5112272 (D. Kan. 2018) .... 6

*Kastendieck v. Bd. of Cnty. Com'rs of Morris Cnty., Kan.*,
934 F. Sup. 387 (D. Kan. 1996) .... 11

*MedSene, LLC v. Univ. of Maryland*,
420 F. Supp.3d 382 (D. Md. 2019) .... 10

*Purvis v. Williams*,
73 P.3d 740 (Kan. 2003) .... 7, 8

*Reiner v. Canale*,
301 F. Supp. 3d 727 (E.D. Mich. 2018) .... 10

*Schall v. Wichita State Univ.*,
7 P.3d 1144 (Kan. 2000) .... 7, 8

*Shahmaleki v. Kansas State Univ.*,
147 F. Supp. 3d 1239 (D. Kan. 2015) .... 6

*Trant v. Oklahoma*,
754 F.3d 1158 (10th Cir. 2014) .... 5, 7, 8

**Statutory Authorities**

18 U.S.C. § 30 .... 4

18 U.S.C. §§ 1831-1839 .... 4

42 U.S.C. § 1983 .... 8

I.R.C. §501(c)(3) .... 2

K.S.A. § 22-2619 .... 4, 13

K.S.A. § 75-6103 .... 7

K.S.A. § 75-6104 .... 11

K.S.A. § 76-6103(a) .... 11

Kan. Const. Art. 6, § 2 .... 9

U.S. Const. Art. I ..... 9

**Rules**

Fed. R. Civ. P. 12(b) ..... passim

Fed. R. Civ. P. 8(a) ..... 13

**Additional Authorities**

K-State 105, https://www.k-state.edu/research/economic-prosperity/focus-areas/kstate-105/ ..... passim

## SPECIFIC RELIEF SOUGHT

The State Defendants seek dismissal of all Plaintiff's claims against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## NATURE OF THE MATTER BEFORE THE COURT

In this *pro se* lawsuit, Plaintiff Lenny Geist ("Mr. Geist") asserts various federal and state law claims against the State Defendants, alleging that K-State, supported by the Kansas Department of Commerce, usurped certain of Mr. Geist's alleged "trade secrets" through K-State's marketing and execution of its "K-State 105"[3] economic growth and advancement initiative.

The State Defendants, as arms of the State of Kansas, have sovereign immunity from all of Mr. Geist's federal claims, as well as immunity under the Kansas Tort Claims Act ("KTCA") from Mr. Geist's state law claims. Moreover, Mr. Geist's federal and state law claims all fail as a matter of law for numerous other reasons, including that Mr. Geist has failed to allege the existence of anything remotely constituting a "trade secret", let alone how the State Defendants usurped it. In sum, Mr. Geist's lawsuit is baseless and amounts to little more than attempt to extort a settlement from the State and its taxpayers. The Court should dismiss all of Mr. Geist's claims against the State Defendants, with prejudice.

---

[3] K-State 105 is an economic growth and advancement initiative that derives its name from the 105 counties in Kansas. Through K-State 105, K-State seeks to leverage new and existing institutional partnerships with its established K-State Extension infrastructure across all 105 counties. This program leans into K-State's land-grant mission to answer the call for a comprehensive economic growth and advancement solution that: (1) fuses innovation and entrepreneurial ideas with research-driven expertise; (2) provides statewide access to ongoing support, knowledge and technical solutions; and (3) engages in business creation and workforce development to propel Kansas businesses and communities forward. *See* https://www.k-state.edu/research/economic-prosperity/focus-areas/kstate-105/.

## STATEMENT OF FACTS

Mr. Geist first filed this lawsuit in the District Court of McPherson County, Kansas. On June 26, 2023, Defendant Kansas State University Foundation ("KSUF")[4] removed the case to this Court on the basis of federal question jurisdiction, and all Defendants consented to removal. *See* Docs. 1, 5-8, 10-12.

While Mr. Geist's "Original Complaint" (hereinafter, the "Complaint") is difficult to follow, at bottom, Mr. Geist claims he possesses certain "Intellectual Property," "Trade Secrets" and/or "Copyrighted Content" as the "sole authority for his company, Kansas Freedom Farms, [LLC]." *See* Doc. 1, Ex. A, Complaint ¶ 1[5] at p.2. Although Mr. Geist fails to describe this alleged intellectual property, trade secrets, or copyrighted material to any meaningful extent, it appears Mr. Geist is claiming he was the first person to conceive for a statewide network of "ag-tech campuses." *Id.* ¶ 10 at p.3. Mr. Geist claims he came up with a plan to use certain federal investment tax credits to finance such developments. *Id.* ¶ 7 at p.3. Mr. Geist alleges he met with certain representatives of KSUF and K-State to pitch his plan in 2018, during which he presented a "self-authored slide deck of approximately 157 pages" that supposedly laid out his "novel" ideas for ag-tech campuses and for funding to be secured by federal investment tax credits that were already in the public domain. *Id.* ¶ 10-11 at pp. 3-4. Mr. Geist alleges that, several weeks after the meeting, he received a letter from a representative of the KSUF declining to partner with Mr.

---

[4] KSUF is an independent I.R.C. §501(c)(3) nonprofit corporation that solicits tax-deductible contributions for the benefit of Kansas State University, but it is not controlled by the University or the State of Kansas.

[5] The Complaint does not use consecutive paragraph numbering throughout. Therefore, the State Defendants cite to both the paragraph number and the page of the Complaint.

Geist and indicating that representatives of the KSUF and K-State considered his plan to be "nothing more than a tax fraud scheme." *Id.* ¶ 12 at p. 4.

Mr. Geist claims that, after the KSUF and K-State declined to participate in what they considered a tax fraud scheme, Mr. Geist "moved forward" with efforts to "connect with other investors," but received nothing more than "letters of support" from certain other entities, none of whom apparently saw fit to partner with Mr. Geist either. *Id.* ¶¶ 15-16 at p.4. Mr. Geist alleges that, in 2023, K-State publicly announced its "K-State 105" initiative, which Mr. Geist claims was "aimed at pirating" Mr. Geist's alleged unique idea for a statewide network of ag-tech campuses and to fund such projects with federal investment tax credits. *Id.* ¶ 4 at p.6.

As it pertains to Lt. Governor Toland, Mr. Geist's Complaint references him only three times: (1) once in the case caption by the title "Lt. Governor David Toland & KDOC Associates, etc."; (2) once by a reference to "Kansas Lt. Governor David Toland and Associates with the KS Dept. of Commerce" in a precatory paragraph listing the defendants, *see* Complaint at p. 1; and (3) in a paragraph listing parties, by the title "Lt. Governor David Toland, Office of the Governor," *id.* ¶ 8 at p.5. The Complaint makes no reference to any personal conduct on Lt. Governor Toland's part, and instead makes only limited reference to the Kansas Department of Commerce's[6] support for the K-State 105 initiative, *see id.* ¶¶ 14 & 16 at p. 4, and the Department's alleged "collusion"[7] with the "Governor's office," *id.* ¶ 1 at p. 9. Therefore, it is obvious that Mr. Geist has sued Lt. Governor Toland in his official capacity, either as Lieutenant Governor, or as Secretary of Commerce, or perhaps both.

---

[6] Mr. Geist did not name or serve the Kansas Department of Commerce as an entity. *See* Doc. 4-1, at p. 35.

[7] Mr. Geist does not allege what this supposed "collusion" is in reference to. One presumes it is alleged "collusion" to support the K-State 105 initiative.

Mr. Geist asserts claims against the State Defendants, KSUF, and certain other economic development entities[8], as follows:

- **Count I** for violation of the "Uniform Trade Secrets Act".
- **Count II** for violation of the federal "Defend Trade Secrets Act".
- **Count III** for violation of the federal, criminal statute at 18 U.S.C. §§ 1831-1839 the "Economic Espionage Act".
- **Count IV** for violation of the federal Digital Millennium Copyright Act.
- **Count V** for tortious interference by way of defendants committing "federal crimes by illegally interfering with Mr. Geist's ability to conduct or continue his affairs".
- **Count VI** for tortious inference by way of defendants committing "federal crimes by intentionally interfering with Mr. Geist's ability to conduct his endeavors".
- **Count VII** for violation of federal, criminal securities laws.
- **Count VIII** for violating the federal criminal statute at 18 U.S.C. § 30 styled the "Computer Fraud & Abuse Act".
- **Count IX** for committing "cyber crimes" in violation of the state criminal statute at K.S.A. § 22-2619; and
- **Count X** for "criminal conspiracy", without specifying whether such count is predicated on Kansas or federal criminal law.

Mr. Geist seeks multiple forms of monetary relief including actual damages of not less than $3,000,000,000[9], punitive damages, emotional distress damages, and impoundment of any

[8] NetWork Kansas, Northwest Kansas Economic Innovation Center, Inc., the Western Kansas Rural Economic Development Alliance, and Grow Hays, Inc.

[9] This is not a typographical error.

"capital, donations, gifts, or items of any monetary value" related to the "K-State 105" effort. *Id.* at p. 11.

## ARGUMENTS AND AUTHORITIES

### I. STANDARD OF REVIEW

It is unclear whether sovereign immunity should be adjudicated pursuant to Rule 12(b)(1) or Rule 12(b)(6). The general rule is that "sovereign immunity" is "jurisdictional in nature" and is therefore properly evaluated under Rule 12(b)(1). *Brantley v. Richards*, 2020 WL 2306634, at *5 (D. Kan. 2020) (collecting cases). That general rule is typically discussed in cases, however, involving states' Eleventh Amendment immunity from suit in a federal forum. *See id.* Here, however, the relevant authority describes that when Eleventh Amendment immunity from suit in a federal forum is waived through removal, states nevertheless maintain their traditional sovereign immunity from *liability*. *Trant v. Oklahoma*, 754 F.3d 1158, 1172-73 (10th Cir. 2014). Thus, because the Tenth Circuit describes this as immunity from liability, and the State Defendants also assert KTCA immunity from Mr. Geist's state law claims, it is possible that analysis under Rule 12(b)(6) is more appropriate. Irrespective of the rule that governs, the result is the same—the State Defendants have sovereign immunity from Mr. Geist's federal claims.

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Frank v. Kansas Dep't of Agric.*, 2019 WL 2393008, at *3 (D. Kan. 2019) (quoting *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004)). Here, no additional facts are necessary to establish the State Defendants' sovereign immunity, so this motion would be considered a facial challenge to subject matter jurisdiction, and this Court will accept the Complaint's jurisdictional allegations as true. *Id.*

As it pertains to the State Defendants' arguments that Mr. Geist fails to allege key elements of his claims, and/or that his federal and state claims fail as a matter of law for other reasons, Rule 12(b)(6) applies. Under Rule 12(b)(6), a court should dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a "complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." *Jones v. Core Civic Corp.*, 2018 WL 5112272, at *2 (D. Kan. 2018). While all "well-pleaded facts and reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff," "[c]onclusory allegations . . . have no bearing upon the court's consideration." *Id.* (internal citations omitted).

## II. THE STATE DEFENDANTS HAVE TRADITIONAL SOVEREIGN IMMUNITY FROM ALL OF MR. GEIST'S FEDERAL CLAIMS

Lt. Governor Toland, as a state official acting in his official capacity, and K-State, as a state university, are both arms of the State of Kansas that enjoy sovereign immunity, *See Flagg v. Kan. Dep't of Children and Family Servs.*, 2022 WL 1421541, at *4 (D. Kan. 2022) (suit against a state official is "in all respects other than a name, to be treated as a suit against the entity," which is "barred by the doctrine of sovereign immunity"); *Shahmaleki v. Kansas State Univ.*, 147 F. Supp. 3d 1239, 1243 (D. Kan. 2015) (holding that K-State, "as a state university, is an arm of the State of Kansas that is immune from suit without clear consent by the State").

In *Alden v. Maine*, 527 U.S. 706 (1999), the Supreme Court explained that in addition to Eleventh Amendment immunity, which generally precludes suits against the states in a federal forum, the states also enjoy a traditional form of sovereign immunity against all liability, irrespective of the forum. This separate immunity is "a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution." *Id.* at 713; *see also Barrow v. Kansas State Univ.*, 2022 WL 2072693, at *3 (D. Kan. 2022) (Broomes, J.) ("States enjoy two

discrete types of sovereign immunity: (1) Eleventh Amendment immunity from suit in federal court, and (2) a general sovereign immunity to damages in any court.").

Because this second form of immunity "is an inherent aspect of sovereignty that the states retained upon entering the Union, *Alden v. Maine*, 527 U.S. 706 (1999), it follows that state law should determine the nature and scope of a state's immunity." *Trant*, 754 F.3d at 1172. There are only three ways a state can relinquish its traditional sovereign immunity: "(1) where the state has consented to suit; (2) where the application of *Ex Parte Young*, 209 U.S. 123 (1908), and its progeny is appropriate; or (3) where Congress has abrogated the state's immunity." *Schall v. Wichita State Univ.*, 7 P.3d 1144, 1154 (Kan. 2000). Here, none of these three exceptions to sovereign immunity from Mr. Geist's federal claims exist.

First, the State of Kansas has not consented to suit under any of the federal intellectual property statutes, securities statutes, or federal criminal statutes that Mr. Geist's Complaint references. "In Kansas, the consent to suit or waiver of sovereign immunity must be based on State action, meaning legislative enactments expressing the will of the elected officials and cannot be based on acts of agents." *Purvis v. Williams*, 73 P.3d 740, 749 (Kan. 2003). The State Defendants are not aware of any Kansas statute in which the Kansas legislature has waived the State's sovereign immunity from claims under the Defend Trade Secrets Act, the Economic Espionage Act, the Digital Millennium Copyright Act, or the various federal criminal statutes that Mr. Geist references. Moreover, Mr. Geist does not identify any Kansas statute purporting to waive the State's sovereign immunity from *any* federal claim, let alone those specifically referenced in the Original Complaint. While Mr. Geist does reference the Kansas Tort Claims Act (KTCA), that statute evidences a partial waiver of the State's immunity *only* from claims arising "under the laws of *this state*"—that is, the State of Kansas. K.S.A. § 75-6103 (emphasis added); *see also Barrow*,

2022 WL 2072693, at *3 ("Moreover, the KTCA plainly states that its waiver of sovereign immunity reaches only to claims brought 'under the laws of this state.'") (internal citation omitted); *see also Billings v. Wichita State Univ.*, 557 F. Supp. 1348, 1351 (D. Kan. 1983) (collecting cases holding that the KTCA partially waives immunity only from claims arising under *state* law). Indeed, it is for this very reason—the KTCA's omission of any waiver of sovereign immunity from *federal* claims—that the Kansas Supreme Court routinely holds the State is immune from federal claims, even when asserted in state court. *See, e.g.*, *Purvis*, 73 P.3d at 751 (State has sovereign immunity from claims under Rehabilitation Act); *Connelly v. State Highway Patrol*, 26 P.3d 1246, 1258 (Kan. 2001) (State has sovereign immunity from claims under 42 U.S.C. § 1983); *Schall*, 7 P.3d at 1161 (State has sovereign immunity from claims under the Family and Medical Leave Act (FMLA)).

In the past, some plaintiffs attempted to argue that defendants who removed a case to federal court waived *all* their sovereign immunity by doing so. *See Hall v. Okla. Dep't of Rehab. Servs.*, 2018 WL 991543, at *2-4 (W.D. Okla. 2018). To begin, that would not appear to even be a valid theory under Kansas law, which holds that a sovereign-immunity waiver *cannot* be effectuated by the actions of agents; it can be done *only* by legislative enactment. *Purvis*, 73 P.3d at 749. In any event, in *Trant*, the Tenth Circuit rejected the argument that removal waives traditional sovereign immunity from *liability*. *See Trant*, 754 F.3d at 1173 ("[A] state may waive its immunity from suit in a federal forum while retaining its immunity from liability"); *see also Hall*, 2018 WL 991543, at *2-4 (applying *Trant* and holding that State of Oklahoma's removal did not waive its traditional sovereign immunity from liability from a claim under the federal Age Discrimination in Employment Act); *Barrow*, 2022 WL 2072693, at *3 (while removal waives Eleventh Amendment immunity from suit in a federal forum, it does not waive traditional

sovereign immunity from liability and dismissing federal claims against K-State); *see also Barnett v. Pikes Peak Cmty. Coll. Police Dep't*, 2015 WL 4245822, at *2-3 (D. Colo. 2015) (same).

Second, because Mr. Geist does not assert a claim against any K-State official in their official capacity, the *Ex Parte Young* exception has no bearing regarding the claims against K-State. Mr. Geist does attempt to sue Lt. Governor Toland in his official capacity, and Mr. Geist's Complaint does purport to seek an injunction to prevent "Defendants from continuing to advance the 'K-State 105' campaign" and to place any "capital, donations, gifts, or items of monetary value," "related to the 'K-State 105 effort," into an escrow account. *See* Original Complaint ¶¶ E & F, at p. 12. However, Lt. Governor Toland is not an official of K-State, and the Complaint contains no allegations indicating Lt. Governor Toland has any authority to direct the K-State 105 initiative, let alone to impound capital, donations, gifts, and other monies held by K-State, which is subject to oversight by the Kansas Board of Regents, *not* the Lieutenant Governor. *See* Kan. Const. Art. 6, § 2. Thus, Lt. Governor Toland cannot be the proper target of an *Ex Parte Young* injunction, and he retains sovereign immunity. *See Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 965 (10th Cir. 2021) (to satisfy the *Ex Parte Young* exception, the named state official "must have some connection with the enforcement" of the challenged action that must extend beyond a "mere general duty to enforce the law") (internal citations and quotations omitted).

Third, and finally, while Congress has attempted to abrogate state immunity for certain intellectual property claims, the Supreme Court has repeatedly held that such attempts are invalid because Congress lacks a valid basis under Article I of the Constitution to abrogate state sovereign immunity for such claims. *See Florida Prepaid Postsecondary Educ. Expense Bd. v. College Sav. Bank.*, 527 U.S. 627, 635-36 (1999) (Congress lacked Constitutional basis to abrogate state sovereign immunity from patent infringement claims); *College Sav. Bank v. Florida Prepaid*

*Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 673 (1999) (no valid abrogation of sovereign immunity for certain Lanham Act claims); *Allen v. Cooper*, 140 S. Ct. 994, 1001-02 (2020) (no Constitutional basis to abrogate state sovereign immunity from copyright claims). While such authority is broad enough to preclude any attempt to abrogate state sovereign immunity in the intellectual property sphere, courts have held that Congress did not even attempt to abrogate sovereign immunity under the federal Defend Trade Secrets Act or the Digital Millennium Copyright Act. *See, e.g.*, *MedSene, LLC v. Univ. of Maryland*, 420 F. Supp.3d 382, 392 (D. Md. 2019) (holding that DTSA contains no language purporting to abrogate state sovereign immunity); *Bluport Co., LLC v. United States*, 533 F.3d 1374, 1383 (5th Cir. 2008) (noting that the DMCA "contains no express waiver of sovereign immunity" and that such a waiver cannot be inferred because it "must be express"); *Reiner v. Canale*, 301 F. Supp. 3d 727, 749 (E.D. Mich. 2018) (DMCA does not abrogate state sovereign immunity). And there is no authority that Congress validly abrogated state sovereign immunity under the Securities Exchange Act of 1934, the Computer Fraud and Abuse Act, or various other federal *criminal* laws that Mr. Geist references. Thus, there has been no valid abrogation of the State Defendants' sovereign immunity with respect to *any* of Plaintiff's federal claims. As a result, the State Defendants have sovereign immunity from Counts II, III, IV, V, VI,[10] VII, and VIII.

[10] Counts V and VI are titled "tortious interference" but reference that liability arises from the Defendants having "committed federal crimes". Thus, the State Defendants believe that Counts V and VI are most accurately characterized as an attempt to create a civil cause of action from the violation of federal criminal statutes. To the extent Mr. Geist is attempting to allege a state law tort claim that is not dependent upon a federal criminal statute, Counts V and VI are barred by KTCA discretionary function immunity and fail to state a claim, for the reasons discussed further herein and in KSUF's Motion to Dismiss.

## III. MR. GEIST'S STATE LAW CLAIMS ARE BARRED BY KTCA IMMUNITY

Regarding Mr. Geist's state law claims, the State Defendants enjoy sovereign immunity except to the extent such sovereign immunity was waived by the Kansas Legislature through the KTCA. Importantly, while the KTCA does set a general rule that the state is not immune for liability for state law tort claim, this general waiver has numerous exemptions set forth in K.S.A. § 76-6103(a). Notable among these, the KTCA preserves sovereign immunity when the claim arises "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee, whether or not the discretion is abused and regardless of the level of discretion involved." *Id.* § 75-6104(e). In determining whether governmental action is discretionary, a court must consider the "totality of the circumstances" and determine whether the "judgements" of the state employee are "of the nature and quality which the legislature intended to put beyond review." *Kastendieck v. Bd. of Cnty. Com'rs of Morris Cnty., Kan.*, 934 F. Sup. 387, 391 (D. Kan. 1996). The exception applies where "no mandatory guidelines exist to govern the defendant's conduct." *Id.*

As noted above, the *only* allegations in the Complaint pertaining to Lt. Governor Toland in his official capacity are that the Department of Commerce supported the K-State 105 initiative and allegedly "colluded" with the Governor's office about something. Whether and to what extent to support an economic development initiative, and whether and to what extent constitutional officers of the State of Kansas should "collude" with each other are not the subject of any mandatory duties or standards and are therefore discretionary. Thus, KTCA discretionary function or duty immunity bars any claims against Lt. Governor Toland.

As it pertains to K-State, the gravamen of Mr. Geist's allegations is that he presented certain K-State officials with a plan for a statewide network of ag-tech campuses and to pay for it with certain public tax incentives in a way that K-State officials believed was an improper tax

scheme. As discussed fully in KSUF's Motion to Dismiss, the ideas that Mr. Geist claims constitute trade secrets aren't trade secrets at all. And whether or not to partner with a random citizen to effectuate technology improvements in agriculture funded by a questionable tax scheme is not the subject of any mandatory duty and, therefore, is clearly discretionary under the KTCA. Thus, the state law claims against K-State are barred by KTCA immunity as well. Therefore, the Court should dismiss Counts I, V, VI, IX and X based on KTCA immunity.

## IV. MR. GEIST FAILS TO STATE VIABLE CLAIMS

Although all of Mr. Geist's claims against the State Defendants are precluded by sovereign immunity and KTCA immunity, Mr. Geist has failed to state any viable claim under a Rule 12(b)(6) standard for the reasons detailed by KSUF in its Motion to Dismiss. These include:

- Counts I and II for violation of the Uniform Trade Secrets Act and Defend Trade Secrets Act fail to state a claim because Mr. Geist does not plead the existence of a trade secret with sufficient detail and his "business plan" is not a secret because he published it.

- Count III for violation of the Economic Espionage Act fails because Mr. Geist cannot bring a civil claim for violation of a criminal statute, and he fails to allege any intent or action to transfer a trade secret to a foreign entity.

- Count IV for violation of the Digital Millennium Copyright Act fails because Mr. Geist does not allege the existence of a registered copyright, fails to plead any copyright with sufficient detail, and does not plead the existence of any particular infringing work.

- Counts V and VI for tortious interference fail because Mr. Geist does not plead an existing or expected business relationship that was interfered with and cannot predicate his claim on alleged interference with a business relationship between himself and the Defendants. Moreover, the Kansas Uniform Trade Secrets Act preempts the tortious interference claims.

- Count VII for violation of federal securities laws fails because Mr. Geist pleads no facts establishing the existence of securities, let alone fraud in the sale of securities.

- Count VIII for violation of the Computer Fraud and Abuse Act fails because Mr. Geist does not plead the unauthorized access of any computer.

- Count IX for committing cyber-crimes fails because K.S.A. § 22-2619 does not create a cause of action, either civil or criminal, and Mr. Geist cannot prosecute a criminal cause of action.

- Count X for criminal conspiracy fails because Mr. Geist fails to cite any statutory authority and cannot prosecute a criminal claim.

- In the alternative, Mr. Geist's entire Original Complaint violates Fed. R. Civ. P. 8(a) as an undifferentiated, shotgun pleading that fails to make specific factual allegations against each respective Defendant.

To avoid needless proliferation and repetition of briefing, the State Defendants do not restate these arguments in full here but instead incorporate them by reference and join fully in the various Rule 12(b)(6) arguments asserted in KSUF's Motion to Dismiss. Thus, in the alternative to dismissal based on immunity, this Court should dismiss all Mr. Geist's claims against the State Defendants for failure to state a claim.

## CONCLUSION

The State Defendants have sovereign immunity and KTCA immunity, and Mr. Geist has failed to state any viable theory. This Court should dismiss this case pursuant to Rule 12(b)(1) and Rule 12(b)(6).

Date: July 17, 2023

Respectfully submitted,

*/s/ Derek T. Teeter*

DEREK T. TEETER KS BAR NO. 23242
MICHAEL T. RAUPP KS BAR NO. 25831
HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000
(816) 983-8080 (FAX)
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

***Attorneys for Defendants Kansas State University and Lt. Governor David Toland***

**CERTIFICATE OF SERVICE**

I hereby certify that on July 17, 2023, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

Further, I certify that on July 17, 2023, a true and correct copy of the foregoing has also been forwarded to Plaintiff via U.S. first class mail, postage prepaid to two locations addressed as follows:

Lenny Geist
11334 W. 131st Street
Overland Park, KS 66213

Lenny Geist
1371 Oakmont Street, Apt. #9
McPherson, KS 67460

*/s/ Derek T. Teeter*
***Attorneys for Defendants Kansas State University and Lt. Governor David Toland***