# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

**FORREST L. "LENNY" GEIST, Pro Se**

**Plaintiff,**

**and**

**Kansas State University,
Lt. Governor David Toland,
Network Kansas, and
NW KS Economic Innovation Ctr., et al.**

**Defendants**

**Case No. 6:23-cv-01129-JWB-GEB**

**ADDENDUM TO PLAINTIFF'S RECENT RESPONSE TO DEFENDANTS' RESPONSE TO PLAINTIFF'S ORIGINAL PETITION W/ADDITIONAL EVIDENCE LISTED AS EXHIBITS Q, R, S, T, & U IN SUPPORT OF PLAINTIFF'S POSITION**

**(Assigned to Judge John W. Broomes )**

Comes now Plaintiff, Forrest L. "Lenny" Geist, herein also referred to as "I' or "me" and represented pro se to add evidence (exhibits) to my initial response to Defendants' replies to my original petition dated 4/28/2023.

Defendants' claim their "K-State 105" economic prosperity (business) plan was launched in 2019 and raised $154,000,000 (USD) that year, $400,000,000 through 2020-2021, and $550,000,000 for it by the end of '22. This is on page 3 of their exhibit. Add'l evidence directly contradicts Defendants' disclosures to the point of rendering them as willfully perjurious. Defendants' edited online content and news media articles validate many incriminating facts.

The "K-State 105" brochure (exhibit) falsely claims this commercial endeavor began in 2019 by soliciting and procuring investment capital to develop real property in all 105 Kansas counties and start new businesses in those areas spanning a variety of industries, technologies, and partnerships while creating thousands of new jobs.

In addition to violating tax laws related to public sector and voluntary sector limitations on capital raising in order to begin, own, and operate for-profit endeavors, Defendants violated protective terms and conditions limiting the KSU Foundation to conservative investments and/or low-risk financial affairs that mitigate downfall risks, etc. Startup investments, incubators, and first-of-kind initiatives suggest high-risk factors that violate these stipulations.

K-State leaders from 2018-2020 never mention "K-State 105" in strategic plans that include how to address enrollment challenges (**Exhibit Q**) or the primary goal to be a "Top 50" research university in the USA (**Exhibit R**).

KSU has since taken my confidential, proprietary documents, and materials and blended them into their "updated" strategic plans that appear to include deceptive efforts to mask their unlawful endeavors. After writing and sending me a firm, contractual, confidentiality agreement on KSUF letterhead (8/23/18), Defendants proceeded to amend their strategic vision, supporting communications, and interdisciplinary initiatives to include public-private partnerships and other community enrichment plans (my trade secrets) detailed in my unique proposal shared in confidence with KSU on 4/24/18 and with KSUF on 7/9/18. Dr. Linton's arrival in Jan. '22 and subsequent collusion with economic dev. fiduciaries (defendants) coincide w/conspiratorial timelines plus KSU's edited strategic plan(s).

There are countless public communications and related documents that audiences, including the Court, can access to verify the "K-State 105" business development effort was taken from my intangible, protected, proprietary property did not start prior to the 2019 calendar or fiscal years as (falsely) presented in court filings. KSU leadership communications from 2017-2020 (**Exhibit S**) verify "K-State 105" did not begin in those years. KSU media clearly

indicate goals were to become a "Top 50" research institution and to fortify enrollments. During President Linton's 2022 state tour, he addressed crowds including one at the "Flint Hills Forum" on **9/2/2022**. 𝕿𝖍𝖊 𝕸𝖆𝖓𝖍𝖆𝖙𝖙𝖆𝖓 𝕸𝖊𝖗𝖈𝖚𝖗𝖞 news article of the same date thoroughly detailed the president's points and mission-based efforts in leading the university. Dr. Linton's talk included the university's strategic vision. ==***His dialogue didn't include "K-State 105"***== or ***any mention*** of constructing mixed-use real estate assets or capital raises to fund and deploy said. His comments centered on addressing declining enrollments at KSU and providing education to enhance quality of life. (**Exhibit T**)

If Defendants wish to maintain this falsehood of starting "K-State 105" in 2019, it confirms "K-State 105" as a derivative of my valuable Intellectual Property and breaks legally binding covenants with me confirmed in writing on letterhead (8/23/18). As true, Defendants did, in fact, commit the 10 federal felonies listed in my original petition when later rethinking and repositioning their existing strategic plan to illegally include my Intellectual Property in it.

Defendants will have the opportunity to submit all federal and state tax filings as well as supporting documents that show when partnerships were created, funding sources, funding amounts, terms and conditions of such alliances, Board approvals for variances from customary operating roles and investment risks, and any/all applicable data (whether digital, in writing, or communicated) that can be forensically scrutinized for dates of origin, keystroke inputs and their dates/times, taxpayer identification numbers (TIN) of stakeholders or benefactors involved with "K-State 105" in any capacity whether directly or indirectly, and how those TIN match with filings submitted to the Internal Revenue Service (IRS), the Kansas Corporation Commission, as well as other local, state, and federal agencies that are regulatory in nature. Defendants' internal data will not withstand careful scrutinization.

I have alerted the IRS of the glaring inconsistencies in the Defendants' exhibits, statements, public messaging, historical documents, and periphery content that implicate them in additional federal offenses beyond those listed in my original petition. I completed Form 211 and mailed it to the IRS Whistleblower- ICE mail stop address at the IRS office in Ogden, UT (84044) in order to facilitate inevitable discovery of Defendants' tax filings and, potentially, those of any other accomplices who may not yet be named as Defendants but may be in due time.

I firmly believe the IRS will be able to provide convincing evidence the Defendants' exhibits and written statements in this matter are fundamentally fictitious and fervently fraudulent in hopes of deceiving the Court.

When I and/or the IRS submit evidence to substantiate my position and implicate the Defendants, this new evidence may be vital to confirming guilt, attributing levels of conspiratorial participation, and damage assessments. I included a USPS confirmation of my Form 211 and related documents delivery to the IRS on 09/13/23. (**Exhibit U**)

RESEPCTFULLLY SUBMITTED

this **20th** Day of **September** , **2023**

**From the Plaintiff, Pro Se**

_____
**Forrest L. "Lenny" Geist**

**ORIGINAL FILED** with the Clerk by email this **20th day** of **September 2023**

Defendants' Counsel noticed simultaneously.