**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **FORREST L. GEIST,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )  Case No. 23-1129-JWB-GEB |
| | ) |
| **KANSAS STATE UNIVERSITY** | ) |
| **FOUNDATION, et al.,** | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiff's Motion to Remove Defendants' Counsel for Conflicts of Interest, Ethics Protocols, and/or Jeopardizing Fairness, Etc. ("Motion") **(ECF No. 36)**. Plaintiff seeks an order which prohibits the following firms from representing any Defendant in this matter: 1) Foulston Siefkin LLP ("Foulston"), 2) Husch Blackwell LLP ("Husch"), 3) Klenda Austerman, LLC ("Klenda"), and 4) Hinkle Law Firm LLC ("Hinkle") due to purported conflicts of interest related to his interactions with members of each of these firms. Shannon D. Wead and A. Nicole Rose of Foulston represent Defendant NetWork Kansas in this matter. Michael T. Raupp and Derek T. Teeter of Husch represent Defendants Kansas State University ("KSU") and Lt. Governor David Toland. And, Christopher A. McElgunn of Klenda represents Defendant Northwest Kansas Economic Innovation Center, Inc. ("NKEIC"). There is no counsel of record for any

1

Defendant from Hinkle. After review of the parties' briefing[1] and thoughtful consideration, the Court **DENIES in part and FINDS AS MOOT in part** Plaintiff's Motion for the reasons set forth below.

I.   **Procedural Background**[2]

Plaintiff initially brought this action in the District Court of McPherson County, Kansas[3] where he alleged Defendants misappropriated certain intellectual property, trade secrets, and copyright protected information he created for use by his company Kansas Freedom Farms, LLC. In accordance, he alleges he developed a business model for Kansas Freedom Farms regarding economic development in the state, and he met with leaders from Defendants KSU, Kansas State University Foundation ("KSUF"), and others to discuss possible private-public partnership to develop "ag-tech campuses" across the state. But, Defendants KSU and KSUF indicated they were not interested in the partnership proposed. Plaintiff alleges he then contacted Defendants NetWork Kansas, NKEIC, Western Kansas Rural Economic Development Alliance ("WKREDA"), and others in hopes of obtaining

---

[1] Plaintiff's Motion to Remove Defendants' Counsel for Conflicts of Interest, Ethics Protocols, and/or Jeopardizing Fairness (ECF No. 36); Defendant Northwest Kansas Economic Innovation Center, Inc.'s Response to Plaintiff's Motion to Remove Defendants' Counsel for Conflicts of Interest (ECF No. 39); State Defendants' Memorandum in Opposition to Motion to Remove Defendants' Counsel (ECF No. 40); Kansas State University Foundation Memorandum in Opposition to Plaintiff's Motion to Remove Defendants' Counsel for Conflict of Interest, Ethics Protocols, and/or Jeopardizing Fairness (ECF No. 41); NetWork Kansas's Response to Plaintiff's Motion to Remove Defendants' Counsel (ECF No. 42); and Plaintiff's Response to Memos from Defendants' Counsel in Regard to Conflicts of Interest, Ethics Protocols, and/or Jeopardizing Ability to Have a Fair Trial, Etc. (ECF No. 43).

[2] Unless otherwise indicated, the information recited in this section is taken from the Notice of Removal with Plaintiff's State Court Petition attached (ECF No. 1). This background information should not be construed as judicial findings or factual determinations.

[3] *Forrest L. "Lenny" Geist v. Kansas State Univ. et al.*, Case No. MP-2023-CV-000036.

investors and partners. Plaintiff alleges the K-State 105 initiative pirates his intellectual property, trade secrets, and copyright protected information. He claims violation of federal statutes, including: 1) 18 U.S.C. § 1836 – Protection of Trade Secrets; 2) 18 U.S.C. § 1831 - Economic Espionage Act; and 3) 18 U.S.C. § 1030 – Computer Fraud and Abuse Act. He additionally alleges state law claims including violation of the Kansas Uniform Trade Secrets Act and tortious interference. Defendant KSUF, with the consent of the other Defendants, removed the case to this Court.[4]

## II. Plaintiff's Motion to Remove Defendants' Counsel for Conflicts of Interest, Ethics Protocols, and/or Jeopardizing Fairness, Etc.

### A. Parties' Positions

#### 1. Plaintiff

Plaintiff alleges prior to filing this action he met or communicated with certain identified members of Foulston, Husch, Klenda, and Hinkle where he provided or discussed components of his intellectual property. He additionally claims to have exchanged privileged communications with members of each firm with the exception of Hinkle. Based on KRPC 1.6-1.10, Plaintiff asserts no member of any of the four firms should be allowed to represent any Defendant in this matter.

---

[4] ECF No. 1 at 2-3.

### 2. Foulston Siefkin LLP

NetWork Kansas, represented by Foulston, alleges Plaintiff mischaracterizes his conversations with Foulston partner, Jack Epps and alleges Plaintiff had no privileged communications with any other Foulston attorney before or after he filed this action. It alleges Plaintiff neither alleges to be nor is a current client of Foulston, therefore KRPC 1.6 and 1.7 which regulate conflicts with current clients are not applicable. NetWork Kansas alleges the communications between Plaintiff and Mr. Epps neither created an attorney-client relationship between Plaintiff and Foulston nor impose any confidentiality obligations on Foulston attorneys. NetWork Kansas alleges no conflict of interest exists and Plaintiff's Motion should be denied.

### 3. Husch Blackwell LLP

Husch represents David Toland in his official capacities as Lieutenant Governor of the State of Kansas and as Secretary of the Kansas Department of Commerce. Additionally, they represent KSU (collectively the "State Defendants"). The State Defendants allege Plaintiff fails to meet his burden. They allege Plaintiff is not now, nor has he ever been a client of Husch, therefore the KRPC rules cited by Plaintiff do not apply. Additionally, they allege Plaintiff met with Kip Randall at Husch for a networking lunch and there was no discussion of Husch representing Plaintiff thus Husch owes no duty to Plaintiff as a prospective client.

### 4. Klenda Austerman, LLC

NKEIC, represented by Klenda, alleges Plaintiff's motion has no legal or factual basis and should be denied. NKEIC alleges the communication between Plaintiff and Klenda members Gregory B. Klenda and Gary M. Austerman consisted of an unsolicited and unilateral request for representation. Neither Mr. Klenda nor Mr. Austerman responded to the email and no other attorney from Klenda has had any communication with Plaintiff. NKEIC asserts no express or implied attorney-client relationship was ever established thus there is no conflict of interest or basis for disqualification of its counsel.

### 5. Hinkle Law Firm LLC

There are no attorneys of record from Hinkle involved in this matter. However, KSUF, represented by members of Lathrop GPM LLP, filed a memorandum in opposition to Plaintiff's Motion which sheds some light on why Plaintiff may have included Hinkle in his Motion. Upon information and belief, KSUF indicates Plaintiff may be referring to allegations in another lawsuit pending in this Court[5] between KSUF and its insurance carrier regarding coverage related to this case. There the Complaint refers to Hinkle possibly being appointed as panel counsel for KSUF in this case. However, that did not occur and KSUF never engaged Hinkle to defend it in this matter. Members of Lathrop GPM LLP represent KSUF in the defense of this action, without the involvement of Hinkle.

---

[5] *Cincinnati Ins. Co., Inc. v. Kansas State Univ. Found., et al.*, 23-1139-JAR-GEB.

KSUF argues an unsolicited email from Plaintiff to Hinkle with no response is insufficient to establish an express attorney-client relationship or even a prospective or implied client relationship pursuant to KRPC 1.18, however, the relationship between Plaintiff and Hinkle is immaterial as Hinkle is not involved in this case in any capacity. KSUF alleges Plaintiff's Motion, as it relates to Hinkle, should be denied as moot. After setting forth the appropriate legal standard, the Court will look at each firm in turn.

### B. Legal Standard

"Disqualification of an attorney chosen by a party to represent him in a lawsuit is a serious matter."[6] A party's right to select his own counsel is not absolute, but may be overridden only where compelling reasons exist.[7] "Courts have the inherent power to disqualify counsel where necessary to preserve the integrity of the adversary process."[8] Therefore, motions to disqualify are "committed to the court's sound discretion."[9] And motions to disqualify "should be reviewed with extreme caution for they can be misused as techniques of harassment."[10]

---

[6] *Field v. Freedman,* 527 F.Supp. 935, 940 (D. Kan. 1981).
[7] *Ramsay v. Boeing Welfare Benefit Plans Comm.*, 662 F.Supp. 968, 970 (D. Kan. 1987) (citing 28 U.S.C. § 1654; *Bottaro v. Hatton Assoc.,* 680 F.2d 895, 897 (2d Cir. 1982)).
[8] *Field,* 527 F.Supp. at 940.
[9] *Koch v. Koch Indus.*, 798 F.Supp. 1525, 1530 (D. Kan. 1992) (citing *E.E.O.C. v. Orson H. Gygi Co. Inc.*, 749 F.2d 620, 621 (10th Cir.1984)).
[10] *Chapmen Eng'g, Inc. v. Nat. Gas Sales Co., Inc.*, 766 F.Supp. 949, 954 (D. Kan. 1991) (quoting *Panduit Corp. v. All States Plastic Mfg. Co.*, 744 F.2d 1564, 1577 (Fed. Cir. 1984)).

"The Kansas Rules of Professional Conduct have been adopted by the District of Kansas as the 'applicable standards of professional conduct….'"[11] The Court must look to Kansas case law for guidance in interpreting those rules.[12] The burden of proof in a motion to disqualify counsel is on the moving party.[13] "The proof must be more than mere speculation and must sustain a reasonable inference of a violation."[14]

Plaintiff proceeds pro se and his pleadings must be liberally construed and are "held to a less stringent standard than formal pleadings drafted by lawyers."[15] However, the Court cannot "take on the responsibility of serving as [his] attorney in constructing arguments and searching the record."[16] Additionally, "*a pro se* plaintiff is not excused from the burden of coming forward with some 'specific factual support' other than conclusory allegations to support his claims."[17] "[T]he court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[18]

---

[11] *Harris v. City of Kansas City,* No. 18-2084-JAR, 2019 WL 1367672, at *4 (D. Kan. March 26, 2019) (quoting D. Kan. R. 83.6.1(a)).
[12] *Harris,* at *4 (citing *Seifert v. Unified Gov't of Wyandotte Cnty. & Kansas City,* No. 11-2327-JTM, 2016 WL 187994, at *1 (D. Kan. Jan. 14, 2016)).
[13] *Field*, 527 F.Supp. at 941.
[14] *Koch*, 798 F.Supp. at 1531.
[15] *Hall v. Bellmon*, 935 F. 2d 1106, 1110 (10th Cir. 1991).
[16] *Mays v. Wyandotte Cnty. Sheriff's Dep't*, 2010 WL 6032763, at *2 (10th Cir. 2011) (citing *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir.2005)).
[17] *Douglas v. JC Penny Logistics Ctr.*, No. 09-2307-EFM, 2010 WL 5139856, at *3 (D. Kan. Dec. 10, 2010) (quoting *Douglas v. Gen. Motors, Corp.* 368 F.Supp.2d 1220, 1228 (D. Kan. 2008)) (emphasis in original).
[18] *Id.* (quoting *Drake v. City of Fort Collins,* 927 F.2d 1156, 1159 (10th Cir. 1991)).

### 1. KRPC 1.7

KRPC 1.7 regulates an attorney's duties to a current client. Specifically, KRPC 1.7(a) says:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
>
> (1) the representation of one client will be directly adverse to another client; or
>
> (2) there is a substantial risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

### 2. KRPC 1.9

KRPC 1.9 addresses an attorney's duties to a former client. KRPC 1.9(a) states:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

A party seeking disqualification under KRPC 1.9 must show the following three factors: "(1) an actual attorney-client relationship existed between the moving party and the opposing counsel; (2) the present litigation involves a matter that is 'substantially related' to the subject of the movant's prior representation; and (3) the interests of the opposing

8

counsel's present client are materially adverse to the movant."[19] "If all three factors are present, the attorney must be disqualified."[20]

### 3. KRPC 1.10

KRPC 1.10 addresses the imputation of an attorney's conflict to their firm. Rule 1.10(a) requires,

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9 , unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

### 4. Establishment of Attorney-Client Relationship

In order for KRCP 1.7 or 1.9 to apply, Plaintiff must establish he has or had an attorney-client relationship with the relevant firms.[21]

> "'[T] the relation of attorney and client is not dependent on the payment of a fee, nor is a formal contract necessary to create this relationship. The contract may be implied from conduct of the parties. The employment is sufficiently established when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession.'"[22]

---

[19] *Harris,* 2019 WL 1367672, at *4 (citing *Seifert*, 2016 WL 187994, at *1).
[20] *Harris,* at *4.
[21] *Matter of Hodge*, 407 P.3d 613, 639 (Kan. 2017); *Harris,* at *4; *Associated Wholesale Grocers, Inc. v. Americold Corp.* 975 P.2d 231, 235 (Kan. 1999).
[22] *Matter of Hodge*, 407 P.3d 613, 648 (2017).

"Kansas recognizes an implied attorney-client relationship only where the client sought <u>and</u> received personal legal advice from the attorney."[23]

### C. Discussion

#### 1. Foulston Siefkin LLP

Plaintiff alleges he met with Foulston partner, Jack Epps, on May 31, 2019 where he discussed in confidence "core components" of his intellectual property. He additionally alleges he exchanged privileged email communications with Mr. Epps involving "contested elements of this legal matter" and other Foulston attorneys received privileged communications from him prior to his filing his case in state court on April 28, 2023. Without further elaboration, Plaintiff alleges "[c]onsistent with Kan. R. Rel. Disc. Att. 1.6 – 1.9 and Rule 240 1.10, no one at Foulston Siefkin is allowed to represent any Defendant in the legal matter at hand."

NetWork Kansas argues, and the Court is inclined to agree, that neither KRPC 1.7 nor 1.8, which address a lawyer's duties to a current client applies as Plaintiff is not a current client of Foulston. Although the establishment of an attorney-client relationship does not require a formal contract and may be implied by the conduct of the parties, an implied attorney-client relationship is established "only where the client sought and received personal legal advice from the attorney."[24] The only facts which possibly support

---

[23] *Associated Wholesale Grocers, Inc.,* at 236 (citing *Pro. Servs. Indus., Inc. v. Kimbrell*, 758 F. Supp. 676, 682 (D. Kan. 1991)) (emphasis added).
[24] *Id.*

10

Plaintiff's claim he is a current client of Foulston is that Foulston attorneys received privileged communications from him.

Plaintiff appears to rely on the definition of client in K.S.A. 60-426 regarding attorney-client privilege. K.S.A. 60-246(c) states, "'Client' means a person or corporation or other association that, directly or through an authorized representative, consults an attorney or attorney's representative for the purpose of retaining the attorney or securing legal service or advice from the attorney in a professional capacity…." Plaintiff argues he consulted with attorneys at Foulston and even if he did not hire them, he is their client. This simply is not the standard.

Plaintiff does not identify what attorneys he reached out to prior to filing his case in state court in April 2023. After Plaintiff filed his Motion, General Counsel for Foulston, Jeffery A. Jordan, conducted an investigation into who Plaintiff contacted.[25] Mr. Jordan emailed Plaintiff to inquire what "other attorneys" he had communicated with and received no response. He additionally asked all Foulston attorneys if they had any contact from Mr. Geist.[26] Two Foulston attorneys, Gary Ayers and Michael Norton acknowledged having received communications from Plaintiff.[27] Mr. Norton received an unsolicited email from Plaintiff, not before he filed his Petition as alleged but after on May 13, 2023. Plaintiff inquired about Mr. Norton representing him in a "dispute that on its face Mr. Norton

---

[25] Jordan Aff. at ¶ 2.
[26] *Id.*
[27] *Id.*

11

recognized was against clients of the firm."[28] Mr. Norton did not read the email beyond the first line and did not respond to Plaintiff.[29] On May 22, 2023, Plaintiff sent Mr. Ayers an unsolicited message on LinkedIn and asked counsel to represent him in the pending litigation.[30] Without obtaining any additional information from Plaintiff, Mr. Ayers immediately advised Mr. Geist he had a conflict of interest.[31] Based upon Plaintiff's interactions with Mr. Ayers and Mr. Norton, he has not established a current, express or implied, attorney-client relationship with either attorney or the Foulston firm.

Next the Court will look at whether Plaintiff's interactions with Mr. Epps established an attorney-client relationship in the past bringing a lawyer's duties to a former client under KRPC 1.9 into play. Plaintiff alleges he met with Mr. Epps on May 31, 2019 to "discuss in confidence core components of my Intellectual Property (IP) including validity and viability." He additionally alleges he "exchanged privileged communications (emails) with Mr. Epps directly involving contested elements of this legal matter." On their face, Plaintiff's assertions do not allege he entered into an attorney-client relationship with Mr. Epps and Mr. Epps denied he did so.

After having connected on LinkedIn, Plaintiff emailed Mr. Epps regarding an investment tax credit idea he thought would be of interest to Foulston clients.[32] No where in the email does Plaintiff ask Mr. Epps to represent him. Instead, he appears to be pitching

---

[28] Jordan Aff. at ¶ 4.
[29] *Id.*
[30] Jordan Aff. at ¶ 3.
[31] *Id.*
[32] Epps Aff. at ¶ 2 and Ex. A-1 (ECF No. 42 a pp. 9-10).

a business opportunity to Foulston clients, via Mr. Epps. Plaintiff says a mutual friend suggested they get acquainted and potentially work together "to raise Federal tax credits from Foulston clients…." and "Foulston clients…can use their taxes to invest in these cutting-edge endeavors."[33] Mr. Epps asserts Plaintiff at no time after receiving the initial unsolicited email asked to retain he or the Foulston firm.[34] No agreement was ever entered into to provide legal services to Plaintiff or his company.[35] No client matter was ever established and no time ever billed.[36] And no arrangement of any kind was made to use the tax credit idea with Foulston clients.[37] Plaintiff in his reply comes forward with no facts to rebut Mr. Epps' factual allegations. Plaintiff has failed to meet his burden to establish either an express or implied attorney-client relationship with Mr. Epps in 2019.

Having failed to prove he had either a former or current attorney-client relationship with Mr. Ayers, Mr. Norton, or Mr. Epps the duties to avoid conflict of interest in KRPC 1.7 and 1.9 which can be imputed to other members of the Foulston firm via KRPC 1.10 are not triggered. Foulston is not disqualified from representing NetWork Kansas in this matter.

---

[33] Ex. A-1 (ECF No. 42 at p. 9).
[34] Epps Aff. at ¶ 3.
[35] *Id.*
[36] *Id.*
[37] Epps Aff. at ¶ 7.

### 2.     Husch Blackwell LLP

Similar to his allegations against Foulston, Plaintiff alleges he met with Husch Senior Associate, Kip Randall, on February 22, 2022 to discuss in confidence "core components" of his intellectual property and exchanged privileged communications with Mr. Randal and others at Husch prior to filing this case in April 2023. He relies on the same Kansas Rules of Professional Conduct, KRPC 1.6-1.10. The Court agrees with the State Defendants Plaintiff's motion falls short of meeting his burden to show a conflict of interest which would disqualify Husch from its representation of them. The Court will first look at whether Plaintiff is a former client of Husch invoking the protections under KRPC 1.9.

Mr. Randall indicates after connecting with Plaintiff on LinkedIn, which he uses for networking, he agreed to meet Plaintiff for lunch at the Herford House in Leawood, Kansas on February 22, 2022.[38] At the lunch meeting, seated in portion of the restaurant populated with other patrons, Mr. Randall and Plaintiff discussed Plaintiff's business generally and his efforts to secure investors.[39] Plaintiff indicated he had been "marketing his plans to various investors, including attorneys, working in or around agriculture and was interested in potential business connections" Mr. Randall might be able to make with Plaintiff and other persons or entities working in that area.[40] Mr. Randall is adamant at no time when scheduling the lunch or during the lunch meeting did Plaintiff raise needing legal

---

[38] Randall Aff. at ¶¶ 4, 6 and 8.
[39] *Id.* at ¶¶ 7 and 8.
[40] *Id.* at ¶ 10.

representation.[41] During the lunch Plaintiff neither asked Mr. Randall to represent him nor did they discuss the terms of legal representation.[42] Plaintiff did not ask for legal advice and none was given.[43] In the days following their lunch meeting, Mr. Randall had follow up email communications where Plaintiff provided documents Mr. Randall understood to be publicly available or which Plaintiff represented he had previously shared or would share with others.[44] Mr. Randall did not understand any of the documents to be confidential in nature.[45] In the course of this written exchange, Plaintiff did not ask for legal advice or for Mr. Randall to represent him on any matter.[46] Mr. Randall never sent Plaintiff a proposed engagement letter and in fact Plaintiff never even inquired what fees he charged.[47] In his reply, Plaintiff came forth with no facts to rebut Mr. Randall's allegations. He has not met his burden to establish either an express or implied former attorney-client relationship with Husch.

Moving to whether Plaintiff is a current client of Husch, the Court again agrees with the State Defendants Plaintiff has failed to meet his burden of proof. Mr. Randall did not hear from Plaintiff again until Saturday, May 20, 2023, after he filed his case in state court. In the email he inquired whether the firm had a conflict of interest with regard to KSU and

---

[41] *Id.* at ¶ 8.
[42] *Id.* at ¶ 11.
[43] *Id.* at ¶ 13.
[44] *Id.* at ¶ 14.
[45] *Id.*
[46] *Id.* at ¶ 15.
[47] *Id.* at ¶ 16.

KSUF[48] and whether the firm could represent him in a lawsuit against them.[49] On May 23, 2023, Mr. Randall confirmed Husch represented KSU.[50] He responded to Plaintiff's email the same day declining representation.[51] Again, Plaintiff came forth with no facts to rebut Mr. Randall's allegations. Again, based upon K.S.A. 60-246, Plaintiff alleges any consultation with an attorney makes him a client. Plaintiff has not met his burden to establish either an express or implied current attorney-client relationship with Husch. Having failed to prove he had either a former or current attorney-client relationship with Mr. Randall, the duties regarding conflict of interest set forth in KRPC 1.7 and 1.9 which can be imputed to other members of the Husch firm via KRPC 1.10 do not come into play. Husch is not disqualified from representing the State Defendants in this matter.

### 3. Klenda Austerman, LLC

Christopher A. McElgunn of Klenda represents NKEIC. Plaintiff alleges he communicated with two principals of Klenda, Greg Klenda and Gary Austerman, prior to filing this action in state court. He characterizes the communications as privileged and including "relevant and protected information" about his intellectual property. Although here to, Plaintiff bases his argument for disqualification upon KRPC 1.6-1.9, he alleges no facts upon which a former attorney-client relationship could be based. Therefore, the Court

---

[48] *Id.* at ¶ 17.
[49] *Id.*
[50] *Id.*
[51] *Id.*

only looks to see whether he has met his burden to show a current attorney-client relationship with Klenda. He has not.

Plaintiff sent an email to Mr. Klenda and Mr. Austerman on April 21, 2023, a week prior to filing his case in state court.[52] In it he is seeking "an attorney or firm to assist" him with a case against KSU and others.[53] Klenda characterizes the email as an unsolicited and unilateral request for representation which neither attorney responded to. Mr. Klenda noted the subject of the email and indicates he did not read any of the information in the body of the email.[54] Mr. Austerman indicates he never received the email.[55] In its investigation to respond to this motion, Klenda asserts it discovered the email was sent to Mr. Austerman's "junk mail" folder and was never retrieved or read.[56]

Plaintiff has not met his burden to establish either an express or implied current attorney-client relationship with Klenda. Where he has failed to prove a former or current attorney-client relationship with either Mr. Klenda or Mr. Austerman, the obligations regarding conflict of interest set forth in KRPC 1.7 which can be imputed to other members of Klenda via KRPC 1.10 are not invoked. Klenda is not disqualified from representing NKEIC in this matter.

---

[52] See Ex. 1 to NKEIC Response at ECF No. 39-1.
[53] *Id.*
[54] ECF No. 3 at ¶ 3.
[55] *Id.* at ¶ 4.
[56] *Id.*

### 4. Hinkle Law Firm LLC

Lastly, Plaintiff alleges he communicated in confidence with Eric Namee of Hinkle on May 7, 2019 at 4:09 p.m. regarding "critical, proprietary, sensitive topics now contested in this matter." He requests no one from Hinkle be allowed to represent any defendant in this case "due to bona fide, documentable concerns of conflicts of interest, ethical restrictions, and/or jeopardizing the fairness to all Parties involved." As noted in section II(A)(5) *supra*, Hinkle does not represent any Defendant in this action but was simply mentioned as possible panel counsel for KSUF in another case in this District regarding insurance coverage for the foundation. KSUF advises Hinkle never represented KSUF in either case. They are represented in both matters by Lathrop GPM, LLC. The Court finds Plaintiff's Motion, as it relates to Hinkle, as moot.

## III. Conclusion

Therefore, for the reasons set forth above, in the Court's discretion Plaintiff's Motion to Remove Defendants' Counsel for Conflicts of Interest, Ethics Protocols, and/or Jeopardizing Fairness, Etc. **(ECF No. 36)** is **DENIED in part and FOUND AS MOOT in part.**

**IT IS SO ORDRED.**

Dated October 6, 2023.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
U. S. Magistrate Judge
